In the Matter of New York Association of Homes and Services for the Aging, Inc., Appellant, v Antonia C. Novello, as Commissioner of Health, et al., Respondents. [786 NYS2d 827]—

Mugglin, J. Appeal from a judgment of the Supreme Court (Clemente, J.), entered August 29, 2003 in Albany County, which, inter alia, dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of the Department of Health denying petitioner's Freedom of Information Law requests.

In New York, the department of social services in each county determines eligibility for Medicaid assistance. As part of this process, an applicant's net available monthly income (hereinafter NAMI) is calculated and stored on a centralized client data base known as the principal provider file (hereinafter PPF) which can then be extracted by the Department of Health (hereinafter DOH). Nursing homes (hereinafter providers) serving Medicaid recipients are required to deduct NAMI before submitting the balance of the bill to Medicaid for payment. As part of its obligation to insure compliance with Medicaid regulations, DOH conducted a trial audit to determine if NAMI amounts were correct on claims submitted for payment to Medicaid by providers. As part of this process, NAMI actually deducted by

the providers was compared to NAMI as shown in the PPF and differences were recorded in a column entitled "over/underpaymt." The theoretical result produced—that underpayments exceeded overpayments—was field tested at a number of nursing homes and resulted in the finding that only overpayments were validated. Respondents assert underpayments of Medicaid could only result from a provider reporting that it received more NAMI than it actually did—a proposition both absurd in the abstract and proven false by the field audit. Respondents also assert that the comparison of the figures showed a fictitious and nonexistent underpayment of Medicaid to the providers only because many providers learned of increases in NAMI, and deducted them, before the county departments of social services did, resulting in some lag time before the PPF figures were brought into conformity with the actual amounts of NAMI.

Petitioner is a not for profit association representing over 300 nonprofit nursing homes and 200 other not for profit health care providers. Acting pursuant to the Freedom of Information Law (see Public Officers Law art 6 [hereinafter FOIL]), petitioner requested from DOH "the facility-specific reports that identify the patients for whom the NAMI amounts, recorded on the [PPF], were less than the amount reported on the provider claim, resulting in a possible 'underpayment.'" Respondents first asserted that the reports do not exist and, second, claimed that disclosure of a patient's medical history would be an unwarranted invasion of privacy under Public Officers Law § 87 (2) (b) and that such records were exempt from disclosure pursuant to Public Officers Law § 87 (2) (a). In opposition to this CPLR article 78 proceeding challenging DOH's denial of the FOIL request, respondents submitted an affidavit of the relevant state employee which, among other things, stated that the "so-called underpayments did not actually result in an underpayment to any provider, and in fact, definitely did not exist." Supreme Court dismissed the petition finding that DOH neither maintained nor compiled the requested information and has no ability to run such a report.

Petitioner appeals, contending that the records do exist and Supreme Court's denial violates the legislative intent of FOIL. Specifically, petitioner argues that DOH's summary computer report of NAMI overpayments and underpayments among nursing homes statewide is evidence that DOH's computer database must contain facility-specific records of NAMI underpayments.

It is well settled that "all agency records are presumptively open to the public absent a specific exemption from disclosure

under Public Officers Law § 87 (2)" (*Matter of Newsday v State Dept. of Transp.*, 10 AD3d 201, 203 [2004], *lv granted* 3 NY3d 610 [2004]; *see Matter of Fappiano v New York City Police Dept.*, 95 NY2d 738, 746 [2001]). Although the policy behind FOIL is to provide the public with "maximum access to the records of government" (*Matter of Capital Newspapers, Div. of Hearst Corp. v Whalen*, 69 NY2d 246, 252 [1987]; *see* Public Officers Law § 84), an entity is not required "to prepare any record not possessed or maintained by such entity" (Public Officers Law § 89 [3]; *see Matter of D'Imperio v Putnam Lake Fire Dept.*, 262 AD2d 410, 411 [1999]; *Matter of Gabriels v Curiale*, 216 AD2d 850, 851 [1995]). Here, the affidavit of the state employee submitted with respondents' answer establishes that the term "underpayment" was a misnomer and that "no printouts isolating and identifying client specific 'underpayments' for each provider for the audit period were ever produced." Moreover, that affidavit reveals that the "over/underpayment" column was placed in the report before any audits were performed and DOH subsequently changed the program that generated the 16-page summary report upon which petitioner relies. Under these circumstances, as petitioner has presented no evidence to the contrary, Supreme Court correctly concluded that DOH did not possess the records or maintain information within its computer system capable of generating a report responsive to the FOIL request.

Next, we reject petitioner's contention that DOH failed to properly certify that the documents did not exist or that it had performed a diligent search as required by Public Officers Law § 89 (3). Public Officers Law § 89 (3) does not dictate the precise format of a certification attesting to a response claiming that the documents cannot be located despite a diligent search (*see Matter of De Fabritis v McMahon*, 301 AD2d 892, 893 [2003]). Clearly, the DOH response to the FOIL application in attesting that it did not possess or maintain records constitutes the requisite certification.

As a final matter, in our view, DOH has failed to establish that it is exempt from providing the information because disclosure would constitute an unwarranted invasion of privacy by revealing the medical or personal records of a patient in a medical facility (*see* Public Officers Law § 87 [2] [b]). DOH has failed to establish this exemption by making the requisite factual showing that disclosure would cause substantial and identifiable harm to the subject which would outweigh the right to access (*see Matter of Mantica v New York State Dept. of Health*, 248 AD2d 30, 33 [1998], *affd* 94 NY2d 58 [1999]). Failure to es-

tablish the factual existence of this claimed exemption (*see Matter of Capital Newspapers Div. of Hearst Corp. v Burns*, 67 NY2d 562, 566 [1986]) renders this claim for exemption unavailing.

Peters, J.P., Carpinello and Lahtinen, JJ., concur. Ordered that the judgment is affirmed, without costs.