08-4992-cv
Wong v. Doar

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: February 23, 2009                    Decided: June 22, 2009)

Docket No. 08-4992-cv

SAI KWAN WONG, by his guardian KEVIN WONG, individually and on behalf of a class of all others similarly situated,

*Plaintiff-Appellant,*

— v.—

ROBERT DOAR, in his official capacity as Commissioner, New York City Human Resource Administration, RICHARD F. DAINES, M.D., in his official capacity as Commissioner of New York State Department of Health, KATHLEEN SEBELIUS, in her official capacity as Secretary, United States Department of Health and Human Services,[1]

*Defendants-Appellees.*

B e f o r e:

CABRANES, RAGGI, and HALL, *Circuit Judges*.

_____

---

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Kathleen Sebelius is substituted for Mike Leavitt as defendant-appellee.

Appeal from an award of summary judgment in favor of defendants on plaintiff's challenge to State Medicaid Manual section 3259.7, an informal rule issued by the United States Department of Health and Human Services' Centers for Medicare and Medicaid Services, which provides that income placed in a Special Needs Trust be considered in determining the extent of benefits to which a Medicaid-eligible person is entitled. We reject plaintiff's argument that section 3259.7 conflicts with the plain language of 42 U.S.C. § 1396p(d), and we accord <u>Skidmore</u> deference to the enforcing agency's issuance of section 3259.7 as a reasonable exercise of discretion to fill a gap in the statute on an issue about which Congress failed to express clearly its intent. We also reject plaintiff's procedural challenge to 42 C.F.R. § 435.832 as time-barred.

AFFIRMED.

———————————

AYTAN YEHOSHUA BELLIN, White Plains, New York (Rene H. Reixach, Jr., Rochester, New York, *on the brief*), *for Plaintiff-Appellant.*

CAROLINA A. FORNOS, Assistant United States Attorney (Elizabeth Wolstein, Assistant U.S. Attorney, *on the brief*), *for* Lev Dassin, Acting United States Attorney for the Southern District of New York, *for Defendant-Appellee Kathleen Sebelius, Secretary, United States Department of Health and Human Services.*

CAROL FISCHER, Assistant Solicitor General (Michael Belohlavek, Senior Counsel, Division of Appeals & Opinions, *on the brief*), *for* Andrew M. Cuomo, Attorney General of the State of New York, *for Defendant-Appellee Richard F. Daines, M.D., Commissioner, New York State Department of Health.*

JANET Z. ZALEON (Kristen M. Helmers and Marilyn Richter, *on the brief*), *for* Michael A. Cardozo, Corporation Counsel of the City of New York, *for Defendant-Appellee Robert Doar, Commissioner, New York City Human Resources Administration.*

REENA RAGGI, *Circuit Judge*:

Plaintiff Sai Kwan Wong is a permanently disabled Medicaid recipient who resides in a nursing home. Through his guardian, Wong appeals an award of summary judgment in favor of the named city, state, and federal defendants, which was entered in the United States District Court for the Southern District of New York (Miriam Goldman Cedarbaum, Judge) on September 29, 2009. Wong asserts that the district court erred in rejecting his challenge to State Medicaid Manual ("SMM") section 3259.7 ("section 3259.7" or "SMM 3259.7"), an informal rule issued by the Department of Health and Human Services' ("HHS") Centers for Medicare and Medicaid Services ("CMS").[2] SMM 3259.7 requires that, for purposes of determining the benefits due a Medicaid-eligible individual, states consider income placed in a Special Needs Trust for that individual's benefit. See 42 U.S.C. § 1396p(d)(4)(A) (defining Special Needs Trust). The rule effectively prevents Medicaid recipients such as Wong from using Special Needs Trusts to shelter their monthly Social Security Disability Insurance ("SSDI") income from certain Medicaid eligibility determinations. Wong asserts that the district court erred in accepting defendants' reliance on SMM 3259.7 in calculating

---

[2] In this opinion HHS and CMS are collectively referred to as "the agency."

3

his benefits because the rule conflicts with the express language of 42 U.S.C. § 1396p(d), the provision of the Medicaid Act that sets forth Medicaid eligibility rules for trusts created with an individual's assets.

We reject Wong's reading of § 1396p(d) and instead conclude that Congress did not speak to the question presented by Wong's claim. We apply Skidmore deference to SMM 3259.7, which was issued by the agency to fill the gap left by Congress. See Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944) (holding that an agency's "rulings, interpretations and opinions" of an act administered by the agency, "while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance"). We conclude that SMM 3259.7 is an appropriate exercise of the agency's authority and we therefore affirm the district court's grant of summary judgment to defendants.

## I. **Background**

### A. Statutory Background

Medicaid provides "joint federal and state funding of medical care for individuals who cannot afford to pay their own medical costs." Arkansas Dep't of Health & Human Servs. v. Ahlborn, 547 U.S. 268, 275 (2006); see also Rabin v. Wilson-Coker, 362 F.3d 190, 192 (2d Cir. 2004). At the federal level, Congress has entrusted the Secretary of HHS with administering Medicaid, and the Secretary, in turn, exercises that delegated authority through the CMS. See 42 U.S.C. §§ 1301(a)(6), 1396-1; Arkansas Dept. of Health & Human Servs.

4

v. Ahlborn, 547 U.S. at 275; Rabin v. Wilson-Coker, 362 F.3d at 192. In New York State, Medicaid is administered by the State Department of Health. See Rubin v. Garvin, 544 F.3d 461, 463 (2d Cir. 2008). At the local level, Wong's Medicaid needs are addressed by a social services district operated by the New York City Human Resources Administration. See Reynolds v. Giuliani, 506 F.3d 183, 187 (2d Cir. 2007).

For a state to receive federal funding for its Medicaid program, CMS must determine that the state's plan for granting assistance complies with the requirements of the Medicaid Act and its implementing regulations. See 42 U.S.C. § 1396a(a); Rabin v. Wilson-Coker, 362 F.3d at 192 (citing Wisconsin Dep't of Health & Family Servs. v. Blumer, 534 U.S. 473, 479 (2002)). To comply with the Act, a state's plan must include, inter alia, "reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan." 42 U.S.C. § 1396a(a)(17). Section 1396a(a)(17) thus requires a state to make two separate determinations: (1) whether an individual is "eligib[le] for" Medicaid and, if so, (2) the "extent of" benefits to which he is entitled. Id. Both determinations are informed by an individual's available "income" and "resources," "as determined in accordance with standards prescribed by the Secretary." Id. § 1396a(a)(17)(B); Himes v. Shalala, 999 F.2d 684, 686 (2d Cir. 1993); see also 42 U.S.C. § 1382a (defining income); id. § 1382b (defining resources).

The parties do not dispute that the first determination was properly made in Wong's favor, i.e., he is eligible for Medicaid assistance. The sole issue on this appeal relates to the

5

second determination — referred to in the regulations and throughout this opinion as a "post-eligibility" determination.  See, e.g., 42 C.F.R. § 435.832.  Specifically, Wong submits that defendants erred as a matter of law when, in calculating his Medicaid benefits, they treated as income the monthly SSDI benefits that he places into a Special Needs Trust.  To facilitate our discussion of this argument, we first review the statutory and regulatory provisions governing the post-eligibility treatment of income generally and of income placed in trusts specifically.

1.    Post-Eligibility Treatment of Institutionalized Individuals' Income

Under the Medicaid Act, individuals receiving care in "medical institutions" are expected to contribute a significant portion of their income towards the cost of their institutional care.  See 42 U.S.C. § 1396a(q)(1)(A).  To implement this requirement, HHS promulgated 42 C.F.R. § 435.832, which governs post-eligibility treatment of income for individuals, like Wong, who receive care in a nursing home.  Section 435.832 requires the agency to make certain deductions from the individual's income and then to apply the remaining income to the cost of the individual's institutional care.[3]  See 42 C.F.R. § 435.832.

Section 435.832 has a state analogue at N.Y. Comp. Codes R. & Regs. tit. 18, § 360-

---

[3] Wong does not challenge defendants' calculation of the applicable income deductions, and we therefore do not discuss them in detail.  We note, however, as an example, that a Medicaid-eligible individual is entitled to a post-eligibility income deduction of a "personal needs allowance . . . which is reasonable in amount for clothing and other personal needs of the individual (or couple) while in an institution and . . . which is not less . . . than . . . $30."  42 U.S.C. § 1396a(q)(1)(A), (2); 42 C.F.R. § 435.832(c)(1).

6

4.9, which requires that, subject to certain deductions, "all income must be applied toward the cost of [an institutionalized individual's] care in the facility."[4]  New York refers to a Medicaid recipient's monthly income minus the applicable deductions as the individual's "net available monthly income" or "NAMI."  See New York Ass'n of Homes & Servs. for the Aging, Inc. v. Novello, 13 A.D.3d 958, 958, 786 N.Y.S.2d 827, 829 (3d Dep't 2004).

## 2. Post-Eligibility Treatment of Assets Placed in Trusts

To receive federal funding, states must also comply with 42 U.S.C. § 1396p(d), the section of the Medicaid Act that sets forth rules concerning trusts created with an individual's assets.  See 42 U.S.C. §§ 1396a(a)(18), 1396p(h)(1) (defining "assets" to "include[] all income and resources of the individual and of the individual's spouse").  In general, § 1396p(d)(3) requires a state, in the course of determining whether an individual is eligible for Medicaid, to consider assets placed in a trust by an individual seeking Medicaid benefits.  See Keith v. Rizzuto, 212 F.3d 1190, 1193 (10th Cir. 2000) ("Section 1396p(d)(3) does not merely 'allow' states to count trusts in determining Medicaid eligibility; it requires them to do so." (emphasis in original)).  With respect to revocable trusts, § 1396p(d)(3) provides that the trust corpus "shall be considered resources available to the individual" and "payments from the trust to or for the benefit of the individual shall be considered income of the

_____

[4] In New York, this post-eligibility determination is part of a process called "chronic care budgeting."  See N.Y. Comp. Codes R. & Regs. tit. 18, § 360-4.9.  In this opinion, we will use the federal regulatory nomenclature and refer to the second determination simply as a "post-eligibility" determination of benefits.

individual." 42 U.S.C. § 1396p(d)(3)(A). With respect to irrevocable trusts, the statute states that the portion of the trust corpus or the income therefrom "from which . . . payment to the individual could be made . . . shall be considered resources available to the individual," and payments made "to or for the benefit of the individual" from the trust "shall be considered income of the individual." Id. § 1396p(d)(3)(B).

In section 1396p(d), however, Congress provided a limited exception to the general rule that a state must consider trust assets in making Medicaid eligibility determinations. Section 1396p(d)(1) instructs that the "rules specified in paragraph (3) shall apply to a trust established by" an individual seeking Medicaid assistance, but "subject to paragraph (4)." Id. § 1396p(d)(1). Paragraph (4), in turn, instructs that "[t]his subsection shall not apply to any of" the trusts defined in § 1396p(d)(4)(A), (B), and (C). Id. § 1396p(d)(4). To resolve this appeal, we focus on the form of trust created by § 1396p(d)(4)(A), known as a Special Needs Trust.[5]

---

[5] A Special Needs Trust is a "discretionary trust established for the benefit of a person with severe and chronic or persistent disability and is intended to provide for expenses that assistance programs such as Medicaid do not cover." Sullivan v. County of Suffolk, 174 F.3d 282, 284 (2d Cir. 1999) (internal quotation marks omitted). Paragraph (d)(4)(A) defines a Special Needs Trust as one

> containing the assets of an individual under age 65 who is disabled (as defined in section 1382c(a)(3) of this title) and which is established for the benefit of such individual by a parent, grandparent, legal guardian of the individual, or a court if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this subchapter.

8

The Secretary has interpreted Congress's instruction that subsection (d) "shall not apply" to the trusts listed in paragraph (d)(4) as a delegation of authority to the agency to determine what eligibility and post-eligibility rules <u>shall</u> apply to those trusts. <u>See generally Wisconsin Dep't of Health & Family Servs. v. Blumer</u>, 534 U.S. at 497 n.13 ("We have long noted Congress' delegation of extremely broad regulatory authority to the Secretary in the Medicaid area." (citing <u>Schweiker v. Gray Panthers</u>, 453 U.S. 34, 43 (1981)); <u>United States v. Mead Corp.</u>, 533 U.S. 218, 229 (2001) (discussing forms of congressional delegation to agencies). Accordingly, in November 1994, the Secretary, through the CMS, added section 3259.7 to the SMM to fill this perceived statutory gap.[6] SMM 3259.7 provides as follows:

> When an exempt trust for a disabled individual [as defined in § 1396p(d)(4)(A)] is established using the individual's income (i.e., income considered to be received by the individual under the rules of the SSI program), the policies set forth in subsection C for treatment of income . . . apply.

---

42 U.S.C. § 1396p(d)(4)(A).

[6] The State Medicaid Manual is available on the CMS website. SMM, <u>available at</u> http://www.cms.hhs.gov/ (follow "Regulations & Guidance" hyperlink; then follow "Manuals" hyperlink under the heading "Guidance"; then follow "Paper-Based Manuals" hyperlink on the left side of the page; then select publication number 45, "The State Medicaid Manual."). The SMM foreword explains that the "manual makes available to all State Medicaid agencies, in a form suitable for ready reference, informational and procedural material needed by the States to administer the Medicaid program. . . . The manual provides instructions, regulatory citations, and information for implementing provisions of Title XIX of the Social Security Act (the Act). Instructions are official interpretations of the law and regulations, and, as such, are binding on Medicaid State agencies." SMM Foreword.

9

SMM 3259.7(B)(1).  Subsection C instructs that:

> Income placed in a [Special Needs Trust] is income for SSI purposes although it is not counted as available in determining Medicaid eligibility.  Thus, <u>such income is also subject to the post-eligibility rules</u> . . . . <u>[A]ll income placed in a [Special Needs Trust] is combined with countable income not placed in the trust for post-eligibility purposes</u>.

SMM 3259.7(C)(5)(b) (emphasis added).  The effect of SMM 3259.7 is that income placed in a Special Needs Trust is not considered in making the first determination of "eligibility for" Medicaid, but <u>is</u> considered in making the second determination of the "extent of" benefits to which an eligible individual is entitled.  Relying on SMM 3259.7, defendants count the income an institutionalized individual places in a Special Needs Trust when determining how much of the individual's income he must contribute to the cost of his care.  Wong challenges SMM 3259.7 on the ground that it conflicts with the express language of 42 U.S.C. § 1396p(d).  <u>See</u> 5 U.S.C. § 706(2)(C) ("The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.").

B.    Factual Background[7]

Plaintiff Sai Kwan Wong is a disabled individual under the age of 65 who resides in a nursing home in New York City.  On December 1, 2005, Wong began receiving monthly Medicaid contributions towards the cost of his nursing-home care.  By way of example, the

---

[7] Except where noted, the following discussion is drawn from the parties' Statement of Stipulated Facts, filed with the district court.

10

parties note that in May 2007, Medicaid paid $8,095.89 of Wong's monthly nursing home bill, which exceeds $9,000 per month.  See Wong v. Daines, 582 F. Supp. 2d 475, 477 (S.D.N.Y. 2008).

During the relevant time period, Wong's sole source of income has been $1,401.00 in monthly SSDI benefits.  Pursuant to the statutory and regulatory scheme set forth above, New York calculated the relevant deductions from Wong's income — deductions that Wong does not challenge — and determined that Wong has a NAMI of $1,024.81.  Pursuant to 42 C.F.R. § 435.832 and N.Y. Comp. Codes R. & Regs. tit. 18, § 360-4.9, New York has required Wong to contribute this NAMI to the monthly cost of his nursing-home care, thereby making up the difference between the total monthly cost of that care and the portion of it paid for by Medicaid.  Wong made this monthly contribution until November 2006.

In November 2006, Wong's legal guardian created a Special Needs Trust on Wong's behalf, see 42 U.S.C. § 1396p(d)(4)(A), and began depositing Wong's $1,024.81 NAMI into the trust each month.[8]  Wong's guardian notified New York City's Human Resources Administration ("HRA") of this action.  In accordance with SMM 3259.7, however, HRA continued to treat Wong's NAMI as income available for contribution towards the monthly cost of Wong's institutional care.

On February 6, 2007, Wong, through his guardian, filed suit in the Southern District

---

[8] It is undisputed that the trust established by Wong qualifies as a Special Needs Trust under § 1396(d)(4)(A).

11

of New York on behalf of himself and a class of similarly situated Medicaid-eligible individuals who had deposited their NAMIs into Special Needs Trusts, but who had nevertheless been required to contribute those funds to the monthly cost of their institutional care pursuant to SMM 3259.7.[9] Wong's complaint asserts that the plain language of § 1396p(d) precludes defendants from considering income placed in a Special Needs Trust for either Medicaid eligibility or post-eligibility purposes and that the Secretary of HHS therefore erred in interpreting the statute as creating a gap requiring agency intervention.

On August 31, 2007, all three defendants moved for summary judgment, and on September 29, 2008, the district court granted the motions.[10] Although the district court

---

[9] The district court construed Wong's complaint to raise claims against the Secretary of HHS pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-706, and against the Commissioners of the New York State Department of Health and New York City Human Resources Administration pursuant to 42 U.S.C. § 1983. See Wong v. Daines, 582 F. Supp. 2d at 476 & n.1. The district court concluded that § 1396p(d)(4) provides Wong with a federal right enforceable through 42 U.S.C. § 1983. See id. at 479; accord Lewis v. Rendell, 501 F. Supp. 2d 671, 687 (E.D. Pa. 2007). We assume, for purposes of this appeal only, that Wong has such a right. Because we reject Wong's claim on the merits, however, we need not decide whether § 1396p(d)(4) meets the test set forth in Blessing v. Freestone, 520 U.S. 329, 340-41 (1997) ("First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms." (citations omitted)).

[10] The Secretary of HHS also moved for dismissal on grounds that the court lacked jurisdiction in the absence of a final agency action, see 5 U.S.C. §§ 702, 704; that plaintiff failed to exhaust his administrative remedies, see id. § 704; and that plaintiff lacked constitutional standing because he had failed to demonstrate injury-in-fact as required by

12

agreed with plaintiff that § 1396p(d)(4) unambiguously exempts Special Needs Trusts from both Medicaid eligibility and post-eligibility determinations, it nevertheless awarded summary judgment in favor of defendants on the ground that the exemption provided in (d)(4) applies only to "[a] trust <u>containing</u> the assets of an individual," and that nothing in (d)(4) prevents the agency from treating Wong's SSDI as available income before those funds are placed in trust. See <u>Wong v. Daines</u>, 582 F. Supp. 2d at 484.

Wong timely appealed this decision.

---

Article III of the Constitution. The district court rejected the Secretary's Article III standing argument but declined to address his final-order and exhaustion arguments because the court was required, in any event, to reach the merits of plaintiff's claim against the Commissioner of the State Department of Health, and that consideration indicated that summary judgment was appropriately granted to the Secretary as well as the other defendants. See <u>Wong v. Daines</u>, 582 F. Supp. 2d at 478. Because the Secretary does not renew these arguments on appeal, we need not address them except to note our agreement with the district court that Wong has constitutional standing to bring this claim. He has alleged that, as a result of SMM 3259.7, he has suffered an injury that would be redressed by a decision of this court in his favor. See <u>Friends of the Earth v. Laidlaw</u>, 528 U.S. 167, 180-81 (2000) (noting that "to satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992)); See <u>Juidice v. Vail</u>, 430 U.S. 327, 331 (1977) (acknowledging plaintiffs' standing to sue state officials for injunctive relief).

The Commissioner of New York City's Human Resources Administration also moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that the City has no control over the challenged policy and therefore cannot be subject to liability under 42 U.S.C. § 1983. The district court declined to address this argument, concluding that its resolution of the state's motion for summary judgment required that summary judgment also be granted in favor of the City. Although the City has renewed this argument on appeal, we need not resolve it because we affirm the district court's grant of summary judgment.

## II.    Discussion

In challenging the district court's award of summary judgment, Wong essentially relies on the legal claims in his complaint, raising a substantive challenge to the application of SMM 3259.7 to the calculation of his Medicaid benefits and a procedural challenge to 42 C.F.R. § 435.832.  We review an award of summary judgment de novo.  See Estate of Landers v. Leavitt, 545 F.3d 98, 105 (2d Cir. 2008).  We conclude that Wong's substantive challenge is without merit and his procedural challenge is time-barred.

### A.    Wong's Substantive Challenge to SMM 3259.7

Wong asserts that SMM 3259.7 is invalid because it conflicts with 42 U.S.C. § 1396p(d).  Accordingly, he submits that the district court erred in allowing defendants to rely on the rule in treating as income his monthly $1,024.81 contribution of SSDI benefits to a Special Needs Trust in determining the "extent of" Medicaid benefits to which he was entitled.  He submits that defendants should, in fact, have been enjoined from applying SMM 3259.7 to the calculation of his benefits.  We disagree.

In reviewing Wong's challenge to SMM 3259.7, we ask first "whether Congress has directly spoken to the precise question at issue," United States v. Connolly, 552 F.3d 86, 89 (2d Cir. 2008) (internal quotation marks omitted), namely, what eligibility and post-eligibility rules apply to income placed by a Medicaid-eligible individual into a Special Needs Trust created pursuant to § 1396p(d)(4)(A).  Because we conclude that Congress did not directly

14

speak to this issue, we proceed to a second inquiry, asking whether the agency's interpretation of § 1396p(d) is of the type eligible for deference under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). See Estate of Landers v. Leavitt, 545 F.3d at 104-05. Resolving that Chevron deference is not due in this case, "we construe the statute in the first instance, giving effect to CMS's nonlegislative interpretation to the extent we find it persuasive in accordance with Skidmore v. Swift & Co., 323 U.S. 134 (1944)." Estate of Landers v. Leavitt, 545 F.3d at 105. Applying these principles, we conclude that judgment was properly entered in favor of defendants.

1.     Congress Has Not Directly Spoken to the Precise Question at Issue

At the first step of analysis, we consider Wong's argument that SMM 3259.7 conflicts with the clear intent of Congress expressed in the plain language of § 1396p(d)(1) and (4). To reiterate that language, subparagraph (d)(1) states:

> For purposes of determining an individual's eligibility for, or amount of, benefits under a State plan under this subchapter, subject to paragraph (4), the rules specified in paragraph (3) shall apply to a trust established by such individual.

42 U.S.C. § 1396p(d)(1) (emphasis added). Subparagraph (d)(4), in turn, instructs that "[t]his subsection shall not apply" to the trusts defined in (d)(4)(A), (B), and (C). Id. § 1396p(d)(4). Wong interprets subparagraph (d)(4)'s instruction that the rules in "this subsection shall not apply" as a clear statement of Congress's intent that "income placed in a [Special Needs Trust] may not be counted" for either eligibility or post-eligibility

15

determinations. Appellant's Br. at 31 (emphasis added). Although the district court appears to have agreed with this construction, we conclude that the plain language of the statute does not, in fact, compel this conclusion.[11]

Subparagraphs (d)(1) and (d)(4) together establish two groups of trusts: those to which (d)(3) applies and those to which it does not apply.[12] Congress's negative command that (d)(3) "shall not apply" to the trusts referenced in (d)(4) does not, however, provide any

---

[11] The district court concluded that "[d]efendants' argument ignores the simplest and clearest explanation: that Congress excepted [Special Needs Trusts] from all eligibility and benefits calculations. No gap exists . . . . Subsection (d) is therefore not ambiguous." Wong v. Daines, 582 F. Supp. 2d at 484 (emphasis added). We do not interpret the statute to manifest clear congressional intent that (d)(4) trusts should not be considered at all in making eligibility or post-eligibility determinations. Because we identify ambiguity as to Congress's intent on this issue, which we resolve by according Skidmore deference to the enforcing agency's rule, see infra at **[23-30]**, we affirm the challenged summary judgment award without reaching the question addressed by the district court, i.e., whether Social Security benefits are properly treated as available income before being placed in trust. See Bruh v. Bessemer Venture Partners III L.P., 464 F.3d 202, 205 (2d Cir. 2006) ("[W]e may affirm [a grant of summary judgment] on any basis for which there is sufficient support in the record, including grounds not relied on by the district court.").

[12] Although (d)(4) instructs that the "subsection shall not apply" to the trusts defined in (d)(4)(A)-(C), 42 U.S.C. § 1396p(d)(4) (emphasis added), we construe that command as excluding the trusts set forth in (d)(4) from the rules set forth in subparagraph (d)(3). Our construction is compelled by the text of (d)(1) and by the rule that we must not construe a statute in a way that leads to absurd results. See Nixon v. Mo. Mun. League, 541 U.S. 125, 138 (2004). It would indeed be absurd to assume that Congress specifically defined certain qualifying trusts in (d)(4)(A)-(C), only to discard those definitions by instructing that the entirety of subsection (d) — including those definitions — "shall not apply" to those very trusts. Moreover, the plain language of subparagraph (d)(1) explicitly identifies the command in (d)(4) as an exception to the rules set forth in subparagraph (d)(3), not to the entirety of subsection (d).

16

guidance as to what rules shall apply to (d)(4) trusts. Cf. Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. at 847-48 (noting statutory "gap" created when Congress failed to reach consensus on issue). Accordingly, we hold that Congress has not "directly spoken to the precise question at issue." United States v. Connolly, 552 F.3d at 89.

Sullivan v. County of Suffolk, 174 F.3d 282 (2d Cir. 1999), relied on by Wong, warrants no different conclusion. In Sullivan, this court held that the plaintiff Medicaid recipient was required to satisfy a Medicaid lien, see 42 U.S.C. § 1396k(a)(1)(A); N.Y. Soc. Serv. Law § 104-b, from the proceeds of his tort settlement against a third party before he could deposit those funds into a Special Needs Trust created pursuant to § 1396p(d)(4)(A), see Sullivan v. County of Suffolk, 174 F.3d at 286. In the course of our discussion, we stated that, "[a]ccording to [§ 1396p(d)(1), (4)], trust assets do not affect the beneficiary's medicaid eligibility as long the trust contains a 'payback' provision allowing trust assets remaining upon the recipient's death to be used to reimburse the state for the total medical assistance it provided to the trust beneficiary." Id. at 285. Wong asserts that in this sentence we "held" that the plain language of the statute requires that assets placed in a qualifying Special Needs Trust be exempted from Medicaid eligibility or benefits determinations. He is incorrect.

First, the context of the quoted statement from Sullivan indicates that the court was simply stating the plaintiff's position, not ruling as to the proper interpretation of the statute. The paragraph consists of four sentences, the other three of which begin with "Sullivan claims" or "Sullivan argues." Id. Moreover, the following paragraph begins by stating, "We

17

reject appellant's arguments . . . ." Id. at 286. To the extent the quoted sentence thus merely stated Sullivan's position, it provides no support for Wong's argument that it constitutes a holding by this court.

Further, the quoted sentence was not essential to the court's holding, which was premised on a determination that the state's Medicaid lien "attached directly to the tort settlement proceeds," such that the plaintiff "had no right to the [funds] and could not use [them] to establish a trust." Id. Because the plaintiff had no right to the funds at issue under 42 U.S.C. § 1396k(a)(1)(A) and N.Y. Soc. Serv. Law § 104-b, our court had no reason to determine the effect those funds would have had on his Medicaid eligibility and post-eligibility benefits determinations had the Medicaid lien not attached and had he been able to place those funds in a Special Needs Trust. Therefore, even to the extent the single sentence in Sullivan might be read to support Wong's construction of § 1396p(d), it is at best dictum that does not bind us here. See Central Va. Cmty. Coll. v. Katz, 546 U.S. 356, 363 ("[W]e are not bound to follow our dicta in a prior case in which the point now at issue was not fully debated."); Martinez v. Mukasey, 551 F.3d 113, 121 n.10 (2d Cir. 2008).

We are also unpersuaded by Wong's argument that use of the term "asset" in § 1396p(d)(4)(A) compels the conclusion that Congress intended to allow individuals to shelter from Medicaid post-eligibility consideration SSDI income placed in Special Needs Trusts. Wong notes that a Special Needs Trust is a trust that contains an individual's "assets," 42 U.S.C. § 1396p(d)(4)(A); that "assets" are statutorily defined to include "all

18

income and resources," id. § 1396p(h)(1); and that the statutory definition of "income," in turn, includes SSDI benefits, see id. § 1396p(h)(2) (incorporating definition of income from § 1392a). Wong argues that, because SSDI benefits are "assets," and assets may be placed in a Special Needs Trust, Congress must have intended to permit individuals to shelter SSDI benefits in Special Needs Trusts from post-eligibility determinations.

While Wong's description of these statutory definitions is correct as far as it goes, it cannot go so far as to support his concluding argument. We may assume that the cited statutory provisions permit the creation of a Special Needs Trust with SSDI income. Indeed, defendants do not dispute that Wong created a bona fide Special Needs Trust under § 1396p(d)(4)(A). The issue presented on this appeal, however, is not whether SSDI income may be used to create a Special Needs Trust, but what Medicaid post-eligibility rules govern the income once it is placed in such a trust. Wong's argument would have force only if we agreed with his assertion that Congress expressly excluded (d)(4) trusts from post-eligibility determinations. We do not. Moreover, we discern no inconsistency in a statute that provides that an individual may create a Special Needs Trust with SSDI income, but leaves it to the agency to determine how to treat the income contained in such a trust — whether from SSDI or any other source — for purposes of Medicaid eligibility and post-eligibility determinations.[13]

---

[13] Contrary to Wong's assertion, the application of SMM 3259.7 does not lead to the "absurd result" that an individual may never place his income in a Special Needs Trust.

19

## 2. SMM 3259.7 Merits *Skidmore* Rather than *Chevron* Deference

Because we conclude that, in creating the (d)(4) exception, Congress did not speak directly to the issue Wong raises on this appeal, we proceed to consider what deference is properly accorded SMM 3259.7 to fill the statutory gap left by Congress.

We conclude that SMM 3259.7 merits Skidmore rather than Chevron deference. In reaching this conclusion, we are mindful that "nonlegislative rules," like those contained in the SMM, "are not per se ineligible for Chevron deference." Estate of Landers v. Leavitt, 545 F.3d at 106. Nevertheless, as we recently observed, there are "few, if any, instances in which an agency manual, in particular, has been accorded Chevron deference." Id.; see also Rabin v. Wilson-Coker, 362 F.3d at 198 (according Skidmore deference to CMS interpretation); accord Dickson v. Hood, 391 F.3d 581, 590 & n.6 (5th Cir. 2004) ("Although

---

Appellant's Br. at 22. The SMM rules provide that an individual's income stream may be placed in a Special Needs Trust and sheltered from post-eligibility consideration if the income is irrevocably assigned to the trust. See SMM 3259.7(B)(1) Note. Wong has not invoked this rule, see Appellant's Br. at 34, and we therefore need not determine whether the Social Security Act's anti-alienation provision would prevent Wong from irrevocably assigning his SSDI income to a Special Needs Trust in this way. See 42 U.S.C. § 407(a) ("The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity."); see also Reames v. Oklahoma, 411 F.3d 1164, 1172-73 (10th Cir. 2005) (holding that § 407(a) prevents SSDI recipient from assigning benefits to Special Needs Trust). We need only note that, regardless of whether this option is available to Wong's "narrow subclass of Special Needs [T]rust beneficiary," it appears to be available "to those individuals who protect assets they had prior to setting up the trust, inherited assets, or assets from settlements compensating them for their disabling injuries," Reames v. Oklahoma, 411 F.3d at 1173, as well as to those with indisputably assignable income streams.

20

not entitled to <u>Chevron</u> deference, relatively informal CMS interpretations of the Medicaid Act, such as the State Medicaid Manual, are entitled to respectful consideration in light of the agency's significant expertise, the technical complexity of the Medicaid program, and the exceptionally broad authority conferred upon the Secretary under the Act."); <u>Indiana Family & Soc. Servs. Admin. v. Thompson</u>, 286 F.3d 476, 480 (7th Cir. 2002) (noting that "[l]ess formal agency interpretations, including those in agency manuals," should be accorded <u>Skidmore</u> deference).

To be sure, in 42 U.S.C. § 1396a(a)(17), Congress has expressly delegated to the Secretary of HHS the authority "to prescribe standards governing the allocation of income and resources for Medicaid [eligibility and post-eligibility] purposes." <u>Wisconsin Dep't of Health & Family Servs. v. Blumer</u>, 534 U.S. at 497. In relevant part, the statute provides as follows:

> A state plan for medical assistance must . . . include reasonable standards . . . for determining eligibility for and the <u>extent of</u> medical assistance under the plan which . . . provide for taking into account only such income and resources as are, <u>as determined in accordance with standards prescribed by the Secretary</u>, available to the applicant or recipient and . . . as would not be disregarded (or set aside for future needs) in determining his eligibility for such aid, assistance, or benefits.

42 U.S.C. § 1396a(a)(17)(B) (emphasis added).

In <u>United States v. Mead Corp.</u>, the Supreme Court observed that such an "express congressional authorization[] to engage in the process of rulemaking or adjudication" is a "very good indicator" that <u>Chevron</u> deference to an agency interpretation is warranted. 533

21

U.S. at 229. The Court tempered this instruction, however, by noting that a congressional delegation warrants Chevron deference when the delegation "produces regulations or rulings for which deference is claimed." Id. Although Congress has clearly placed in the hands of the Secretary of HHS the authority to create standards relevant to Wong's claim, the Secretary has neither "produced regulations" pursuant to § 1396a(a)(17), see Estate of Landers v. Leavitt, 545 F.3d at 106 (noting that SMM not promulgated "through notice and comment or adjudication, or in another format authorized by Congress for use in issuing 'legislative' rules"), nor "claimed" Chevron deference for SMM 3259.7, see Appellee's Br. at 39-40 (suggesting that SMM 3259.7 warrants only Skidmore deference). Nevertheless, the Court also observed in Mead that, "as significant as notice-and-comment is in pointing to Chevron authority, the want of that procedure here does not decide the case, for we have sometimes found reasons for Chevron deference even when no such administrative formality was required and none was afforded." 533 U.S. at 230-31.

Although United States v. Mead Corp. thus raises an interesting question about the possibility of according Chevron deference in this case, in the end we are content simply to rely on the agency's concession that Skidmore properly guides our assessment as affirmance would be warranted under either standard. See generally Doe v. Leavitt, 552 F.3d 75, 80 (1st Cir. 2009) (deeming it unnecessary to decide whether informal adjudication pursuant to express congressional delegation warrants Chevron or Skidmore deference because agency interpretation "withstands scrutiny" under either standard). It is enough to say that, in the

22

context of this case involving the Medicaid Act, Congress's express delegation of rulemaking authority to HHS in § 1396a(a)(17) informs, as it must, our analysis of the agency's interpretation.

### 3. SMM 3259.7 is Persuasive Under *Skidmore*

Under Skidmore v. Swift & Co., we give the agency's interpretation in SMM 3259.7 "'respect according to its persuasiveness,' as evidenced by 'the thoroughness evident in the agency's consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.'" Estate of Landers v. Leavitt, 545 F.3d at 107 (citations and alteration omitted) (quoting United States v. Mead Corp., 533 U.S. at 228; Skidmore v. Swift & Co., 323 U.S. at 140).

While the application of Skidmore deference can thus produce "a spectrum of judicial responses, from great respect at one end to near indifference at the other," United States v. Mead Corp., 533 U.S. at 228 (citations omitted), the Supreme Court has signaled that HHS interpretations should receive more respect than the mine-run of agency interpretations, see Estate of Landers v. Leavitt, 545 F.3d at 107 (citing Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994); Schweiker v. Gray Panthers, 453 U.S. at 43 & n.14). Accordingly, "[w]e have held that even relatively informal CMS interpretations warrant respectful consideration due to the complexity of the Medicaid statute and the considerable expertise of the administering agency." Morenz v. Wilson-Coker, 415 F.3d at 235 (alteration, and internal quotation marks omitted). Indeed, we have characterized the SMM "as precisely the

23

kind of informal interpretation that warrants some significant measure of deference." Id. (alteration and internal quotation marks omitted). Consistent with these views, we have observed that "in cases such as those involving Medicare or Medicaid, in which CMS, 'a highly expert agency, administers a large complex regulatory scheme in cooperation with many other institutional actors, the various possible standards for deference' — namely, Chevron and Skidmore — 'begin to converge.'" Estate of Landers v. Leavitt, 545 F.3d at 107 (alteration omitted) (quoting Community Health Ctr. v. Wilson-Coker, 311 F.3d 132, 138 (2d Cir. 2002)).

With this in mind, we begin our analysis of the agency's interpretation by again considering the text and structure of § 1396p(d). See John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank, 510 U.S. 86, 109 (1993) (quoting Public Employees Ret. Sys. of Ohio v. Betts, 492 U.S. 158, 171 (1989), for the proposition that "no deference is due to agency interpretations at odds with the plain language of the statute itself"). As discussed more fully supra at **[15-17]**, subparagraph (d)(4) exempts qualifying trusts from the rules in (d)(3) but is silent about the nature or scope of the rules the agency should apply in their stead. Significantly, subparagraph (d)(4) contains no textual limit on the scope of the agency's authority to fill the gap left by Congress. As already noted, in the Medicaid statute, Congress specifically conferred broad general rulemaking authority on the agency. See supra at **[21-22]**. In that context, we are not inclined to infer from statutory silence a congressional intent to have no rules whatsoever apply to income placed in qualifying (d)(4) trusts.

24

Second, we note that SMM 3259.7 is fully consistent with Congress's general instruction that individuals must contribute their available income to the cost of their institutional care. See generally United States v. Mead Corp., 533 U.S. at 235 (quoting Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 136 (1997), for proposition that "reasonable agency interpretations carry 'at least some added persuasive force' where Chevron is inapplicable"). For example, under 42 U.S.C. § 1396a(q)(1)(A), "the State plan must provide that, in the case of an institutionalized individual . . ., in determining the amount of the individual's . . . income to be applied monthly to payment for the cost of care in an institution, there shall be deducted from the monthly income (in addition to other allowances otherwise provided under the State plan) a monthly personal needs allowance." 42 U.S.C. § 1396a(q)(1)(A) (emphasis added). Section 1396r-5(d)(1) applies a similar rule to an individual's spouse's income. See id. § 1396r-5(d)(1).

Congress has created statutory exemptions to this general rule. For example, individuals in institutional care are entitled to an income exemption for a modest "personal needs allowance." See id. § 1396a(q)(1)(A). The deduction is small, however, because, in Congress's judgment, "most subsistence needs are met by the institution." H.R. Rep. No. 92-231 (1971), as reprinted in 1972 U.S.C.C.A.N. 4989, 5136. Similarly, 42 U.S.C. § 1396a(r)(1)(A) instructs that "reparation payments made by the Federal Republic of Germany" "shall be disregarded" in the "post-eligibility treatment of income of individuals" receiving institutional care. Finally, in 42 U.S.C. § 1396a(o) Congress instructed that SSDI

25

benefits paid in accordance with § 1382(e)(1)(E) and (G) "will be disregarded for purposes of determining the amount of any post-eligibility contribution by the individual to the cost of the care and services provided by the hospital, skilled nursing facility, or intermediate care facility." These express exemptions reinforce our conclusion that Congress's statutory silence in § 1396p(d)(4) about what rules apply to post-eligibility determinations for (d)(4) trusts is properly understood as a congressional delegation of the issue to the enforcing agency.[14]

Third, as we explained in Estate of Landers v. Leavitt, a rule issued in a CMS policy manual warrants deference as "the product of an interpretation that is relatively formal within the universe of informal interpretations." 545 F.3d at 110. "'The deference due' to an agency interpretation 'is at the high end of the spectrum of deference' when 'the interpretation in question is not merely ad hoc but is applicable to all cases.'" Id. (quoting Chauffeur's Training Sch., Inc. v. Spellings, 478 F.3d 117, 129 (2d Cir. 2007)). Wong does not dispute that SMM 3259.7 is universally applicable and, indeed, the SMM Foreword notes that the instructions contained therein "are official interpretations of the law and regulations, and, as such, are binding on Medicaid State agencies." SMM Foreword (emphasis added). In Rabin v. Wilson-Coker, we considered SMM 3308.1, see 362 F.3d at 198, a CMS interpretation that the SMM identified as merely "tentative" and "advisory only until such

_____

[14] On this appeal, Wong does not claim that he failed to receive any of the exemptions to which he was entitled.

26

time as regulations are published," SMM 3308.1, and we accorded that CMS interpretation an "intermediate level" of deference, 362 F.3d at 198. As a final and long-standing interpretation on a matter expressly delegated to the agency, SMM 3259.7 is due substantially more deference than the SMM provision at issue in Rabin v. Wilson-Coker.

Fourth, SMM 3259.7 was issued in November 1994, the year after § 1396p(d) was enacted on August 10, 1993, as part of the Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103-66, § 13611(b), 107 Stat. 312, 625, and it has remained unchanged since that time. We give "substantial weight" to an agency's construction of a statute that it is charged with enforcing, "particularly when the construction is contemporaneous with the enactment of the statute," Lowe v. S.E.C., 472 U.S. 181, 216 (1985) (citing Skidmore v. Swift & Co., 323 U.S. at 140), and "longstanding," Estate of Landers v. Leavitt, 545 F.3d at 107. See also North Haven Bd. of Educ. v. Bell, 456 U.S. 512, 522 n.12 (1982) ("In construing a statute, this Court normally accords great deference to the interpretation, particularly when it is longstanding, of the agency charged with the statute's administration."); Barnett v. Weinberger, 818 F.2d 953, 960-61 (D.C. Cir. 1987) ("It is well established that the prestige of a statutory construction by an agency depends crucially upon whether it was promulgated contemporaneously with enactment of the statute and has been adhered to consistently over time." (footnotes omitted)); Atchison, Topeka & Santa Fe Ry. Co. v. Pena, 44 F.3d 437, 445 (7th Cir. 1994) (noting that under Skidmore, courts must "pay attention" to whether challenged interpretation is contemporaneous with passage of law and consistent over time).

27

Finally, we note that SMM 3259.7 has never faced a serious challenge in either federal or state court. We are aware of only one case in which the argument that SMM 3259.7 conflicts with § 1396p(d) has been addressed. See Reames v. Oklahoma, 411 F.3d 1164 (10th Cir. 2005). In rejecting the argument, Reames held that SMM 3259.7 "does not conflict with the purposes of federal law" insofar as the rule "provides for full § [1396p](d)(4)(A) protection to all those who would use it to protect income received from sources other than Social Security, and attempts to effectuate both federal law and federal regulation even for that narrow class of disabled individual." Id. at 1171 (quotation marks omitted). That this aspect of SMM 3259.7 has been challenged so infrequently is further evidence that the rule is well-settled.

In light of our already heightened deference to HHS interpretations of the Medicaid Act, Congress's express delegation of authority to the agency, and our consideration of the Skidmore factors, we have no difficulty concluding that SMM 3259.7 is persuasive in its post-eligibility treatment of SSDI income placed in § 1396p(d)(4)(A) Special Needs Trusts.

B. Wong's Procedural Challenge to 42 C.F.R. § 435.832

In addition to his substantive challenge to SMM 3259.7, Wong raises a procedural challenge to 42 C.F.R. § 435.832, the 1980 regulation requiring that "[t]he agency must reduce its payment to an institution . . . by the amount that remains after deducting the amounts specified in paragraphs (c) and (d) of this section, from the individual's total income." Section 435.832 is materially the same as New York's regulation, N.Y. Comp.

28

Codes R. & Regs. tit. 18, § 360-4.9, which requires that "[f]or a person in permanent absence status in a medical facility . . . all income must be applied toward the cost of care in the facility" subject to deductions that track those in the federal regulation. Wong argues that the federal regulation is invalid because it was not promulgated in accordance with the notice and comment requirements of the Administrative Procedure Act (APA), 5 U.S.C. § 553. This argument need not detain us.

Wong's procedural challenge to the validity of § 435.832 is governed by "the six-year 'catch-all statute of limitations for federal claims' that we have previously found applicable to procedural challenges to agency action brought under the APA" in cases where no different statute of limitations is prescribed by statute. Schiller v. Tower Semiconductor Ltd., 449 F.3d 286, 293 n.7 (2d Cir. 2006) (quoting Polanco v. U.S. Drug Enforcement Admin.,158 F.3d 647, 652 (2d Cir. 1998)); Harris v. FAA, 353 F.3d 1006, 1009 (D.C. Cir. 2004); see also 28 U.S.C. § 2401(a) ("[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."). Under the APA, the statute of limitations begins to run at the time the challenged agency action becomes final. See 5 U.S.C. § 704; Harris v. FAA, 353 F.3d at 1010. In the case of claimed procedural error in the promulgation of a regulation, final agency action occurs upon issuance of the regulation. See, e.g., Preminger v. Sec'y of Veterans Affairs, 517 F.3d 1299, 1307-08 (Fed. Cir. 2008) (holding that § 2401(a) statute of limitations on procedural challenge began to run "at the latest" on the date the challenged

29

regulation was amended); Cedars-Sinai Med. Ctr. v. Shalala, 177 F.3d 1126, 1129 (9th Cir. 1999) ("[A] cause of action challenging procedural errors in the promulgation of regulations accrues on the issuance of the rule."); JEM Broad. Co. v. FCC, 22 F.3d 320, 325 (D.C. Cir. 1994) (concluding that expiration of statute of limitations barred procedural challenge to agency enforcement action).[15]

The statute of limitations on Wong's procedural challenge to § 435.832 thus began to run in 1980 and expired six years later, regardless of the fact that Wong now claims to raise the issue as a defense to defendants' enforcement of the regulation. See Schiller v. Tower Semiconductor Ltd., 449 F.3d at 293 ("'[C]hallenges to the procedural lineage of agency regulations, whether raised by direct appeal, by petition for amendment or rescission of the regulation or as a defense to an agency enforcement proceeding, will not be entertained outside the time period provided by statute.'" (emphasis and alteration omitted and other emphasis added) (quoting JEM Broad. Co. v. FCC, 22 F.3d at 325)). Consequently, Wong's claim of procedural error in the promulgation of § 435.832 is time-barred.

---

[15] Substantive challenges under the APA are also governed by the six-year statute of limitations in § 2401(a), unless a different limitations period is specified by statute. See, e.g., Nagahi v. INS, 219 F.3d 1166, 1171 (10th Cir. 2000); see also Preminger v. Sec'y of Veterans Affairs, 517 F.3d at 1307 (collecting cases). The statute of limitations for a substantive challenge, however, begins to run at the time of the adverse agency action on the particular claim. See Wind River Mining Corp. v. United States, 946 F.2d 710, 716 (9th Cir. 1991) ("[A] substantive challenge to an agency decision alleging lack of agency authority may be brought within six years of the agency's application of that decision to the specific challenger."). It is undisputed that Wong's substantive challenge to SMM 3259.7 is timely.

**III.** **Conclusion**

To summarize, we conclude that:

(1)     the text of 42 U.S.C. § 1396p(d) does not speak to the precise issue raised by Wong's claim, i.e., whether income placed in a Special Needs Trust created pursuant to § 1396p(d)(4)(A) is exempt from Medicaid post-eligibility determinations;

(2)     SMM 3259.7, which was issued by the agency to fill the gap left by Congress is persuasive in light of (a) our heightened deference to HHS interpretations of the Medicaid Act, (b) Congress's express delegation of authority to the agency to prescribe standards governing the post-eligibility treatment of income, and (c) our analysis of the relevant Skidmore factors;

(3)     Wong's alternative claim of procedural error in the promulgation of 42 C.F.R. § 435.832 is time-barred.

The district court's grant of summary judgment is hereby AFFIRMED as to all defendants.