[893 NYS2d 103]

In the Matter of WILLIAM JENNINGS, as Administrator of the Estate of MATTIE LOU HAMMOND, Deceased, Respondent, v COMMISSIONER, N.Y.S. DEPARTMENT OF SOCIAL SERVICES, et al., Respondents. COMMISSIONER, NEW YORK STATE DEPARTMENT OF HEALTH, Nonparty Appellant.

Second Department, January 5, 2010

### APPEARANCES OF COUNSEL

*Andrew M. Cuomo, Attorney General*, New York City (*Michelle M. Aronowitz* and *Carol Fischer* of counsel), for nonparty appellant.

*Beth Polner Abrahams*, Garden City, for respondent.

### OPINION OF THE COURT

BALKIN, J.

In New York, the concept of a supplemental needs trust originated in 1978,[1] establishing a vehicle for parents and guard-

---

1. The seminal case of *Matter of Escher* (94 Misc 2d 952 [1978], *affd* 75 AD2d 531 [1980], *affd* 52 NY2d 1006 [1981]) permitted a parent to create a trust for a disabled adult child, without jeopardizing the child's eligibility for government benefits (*see Matter of Abraham XX.*, 11 NY3d 429, 435 [2008]).

ians of adult children with severe and chronic disabilities to provide for their children's future by transferring their funds to a trust, created to pay for items that will enhance their children's quality of life without jeopardizing their children's eligibility for government benefits, such as Supplemental Security Income (hereinafter SSI), pursuant to 42 USC § 1382 *et seq.*, and Medicaid, pursuant to 42 USC § 1396 *et seq.* and Social Services Law § 363 *et seq.*

The issues of first impression at the appellate level are whether the transfer of a settlor/parent's recurring income into a supplemental needs trust created for his or her disabled child must be counted toward (a) the settlor/parent's net available monthly income for calculation of the amount of the Medicaid benefits to which the settlor/parent is entitled after he or she is determined to be eligible for Medicaid (hereinafter post-eligibility benefits) and (b) the obligation of the estate of a deceased settlor/parent for the reimbursement of a certain portion of those benefits. We hold that, in the instant matter, there was a rational basis to include this income in the calculations.

I

The following facts essentially are undisputed. On September 15, 2004 the petitioner's decedent, Mattie Lou Hammond (hereinafter Hammond), who was then 85 years old, established an irrevocable supplemental needs trust (hereinafter SNT) for the benefit of her 52-year-old son, Frediland Hammond (hereinafter Frediland), who is disabled due to mental retardation and developmental disabilities. Frediland is a recipient of Social Security disability insurance (hereinafter SSDI) (*see* 42 USC § 423) and Medicare benefits (*see* 42 USC § 401 *et seq.*), but not Medicaid benefits. Hammond, whose only income consisted of Social Security retirement benefits and a small widow's pension, created the trust by executing a special needs trust agreement (hereinafter the SNT agreement), which designated her cousin, the petitioner, William Jennings, as trustee, with the discretion to use the SNT income and/or principal to insure that Frediland enjoyed the "benefits of education, recreation, hobbies, vacation, modes of transportation, entertainment, and any other need and/or comforts [he] may require to maximize [his]

---

*Matter of Escher* and other cases eventually resulted in the Legislature's adoption of EPTL 7-1.12 in 1993, which permitted a parent or guardian to create a third-party inter vivos supplemental needs trust (*see* 4-7 New York Civil Practice: EPTL 7-1.12).

life and to keep [him] in the general community for so long as medically possible and safe."

The SNT agreement, which initially funded the trust with the sum of $250, provided that "any person may, at any time, by Court order, assignment, gift, transfer, deed, or will, provide income or add to the principal of the Trust." The SNT agreement also authorized the trustee to use the income for Frediland's necessary medical care, equipment, and supplies that were not paid for by private insurance or Medicaid. Finally, in accordance with statutory requirements, the SNT agreement provided for the termination of the SNT upon Frediland's death, with the trustee using any remaining principal and accumulated interest to reimburse or "pay back" the New York State Department of Social Services (hereinafter NYS DSS), the nonparty appellant, Commissioner, New York State Department of Health (hereinafter the DOH), or any other appropriate "Medicaid entity," for the medical assistance provided to Frediland during his lifetime, before distributing any remaining trust assets to his estate. Coincident with the execution of the SNT agreement, on September 15, 2004 Hammond moved into a residential health care facility or nursing home in Hempstead, New York. On January 14, 2005 Hammond applied to the Nassau County Department of Social Services (hereinafter the NCDSS) for medical assistance benefits under the Medicaid program, to cover the costs of her own nursing home and medical care, retroactive to October 6, 2004. In her application, Hammond indicated that she had a total gross income in the sum of $1,780.84 per month, consisting of her Social Security retirement benefits in the monthly sum of $1,173, and a monthly pension benefit in the sum of $607.84; she informed the NCDSS, however, that she had been depositing all of her income into the SNT for Frediland's benefit.

On January 27, 2005 the NCDSS issued a notice of intent to establish liability toward chronic care, which informed Hammond that she was eligible to receive Medicaid benefits. This determination of entitlement to post-eligibility benefits by the NCDSS is part of a process known as "chronic care budgeting" (18 NYCRR 360-4.9). Although the NCDSS determined that Hammond was eligible for Medicaid since the funds she deposited in Frediland's SNT could be excluded from her income for the purpose of determining her Medicaid eligibility, it simultaneously treated those same funds as income available to her for the purpose of calculating her required contribution for

her own post-eligibility monthly cost of care. Specifically, the NCDSS determined that Hammond would have to contribute her net available monthly income (hereinafter NAMI)[2] in the sum of $1,731 per month toward the cost of her post-eligibility Medicaid services, calculated by subtracting, from her gross monthly income of $1,847, a monthly personal needs allowance in the amount of $50 and a monthly Medicare deduction in the amount of $66.

Hammond challenged the determination of the NCDSS, and asked for an administrative fair hearing in connection with the challenge. On May 26, 2006 an administrative fair hearing was conducted by the New York State Office of Temporary and Disability Assistance, which is part of the DOH, the agency responsible for the administration and interpretation of Medicaid laws in New York (see Kuppersmith v Dowling, 93 NY2d 90, 97 [1999]). Although Hammond did not testify at the hearing, Jennings testified and introduced evidence of the existence and nature of the SNT agreement, Hammond's application to the NCDSS, and the expenses actually paid from the SNT on Frediland's behalf. According to Hammond, her NAMI should have been "zero" because she deposited all of her monthly income into Frediland's SNT, relying on the rulings of Matter of Kaiser v Commissioner of N.Y.S. Dept. of Health (13 Misc 3d 1211[A], 2006 NY Slip Op 51786[U] [2006]) and Matter of Correri v Commissioner of N.Y. State Dept. of Health (Sup Ct, Nassau County, May 19, 2005, index No. 17372/04). The NCDSS disagreed, holding that, while the income placed in the SNT would not render Hammond ineligible for Medicaid, that income was countable for post-eligibility purposes in order to calculate Hammond's required contribution toward her own cost of care.

Following the administrative fair hearing, the Commissioner of the DOH (hereinafter the Commissioner) confirmed the NCDSS's determination in a decision dated June 7, 2006, relying upon past guidance letters and interpretative regulations contained in the State Medicaid Manual (hereinafter the SMM) issued by the United States Department of Health and Human Services' Centers for Medicare and Medicaid Services (hereinafter the CMS). The Commissioner reasoned, in part:

"[Ms. Hammond] submitted documentation into the

---

**2.** New York's Medicaid authorities refer to a Medicaid recipient's monthly income, minus certain applicable deductions, as the individual's "Net Available Monthly Income" or NAMI (see Matter of New York Assn. of Homes & Servs. for Aging, Inc. v Novello, 13 AD3d 958 [2004]).

hearing record that [her] income is being deposited monthly into the supplemental needs trust. Such income deposited into the trust is exempt from any of the transfer provisions for purposes of Medical Assistance. However, in order to be exempt as income, the income must be diverted to a trust for [her] benefit. By letter dated September 23, 1997, the Department of Health clarified Administrative Directive 96 ADM 8, and provided that neither the Administrative Directive nor the Regulations allow for the diversion of income to a trust for the benefit of any other individual."

On September 27, 2006 Hammond commenced the instant CPLR article 78 proceeding, seeking to annul the determination rendered by the DOH's designee[3] after the fair hearing, on the grounds, inter alia, that it was arbitrary and capricious and affected by an error of law, specifically, that it was contrary to 42 USC § 1396p (c) (2) (B) (iii) and (iv), Social Services Law § 366 (5) (d) (3) (ii) (C) and (D), and 18 NYCRR 360-4.4 (c) (1) (iii). The DOH and the NCDSS answered the petition, denying the material allegations in the petition and asserting, among other things, that relevant federal and state laws require "that such [SNT] trusts contain the assets of the individual with the disability" and the "income or resources of [Hammond] placed into a trust are not excluded" under the statutory framework for purposes of calculating her entitlement to her own benefits, or the extent thereof.

In a judgment entered January 12, 2007 (2007 NY Slip Op 34450[U]), the Supreme Court granted the petition and an-

---

**3.** Although Hammond commenced this CPLR article 78 proceeding against the Commissioner of the NYS DSS and the NCDSS without naming the DOH as a party, DOH is the agency responsible for the administration of the Medicaid program. Among its duties in this regard, the DOH supervises the local social service departments in each county, including the NCDSS. Accordingly, DOH may properly prosecute this appeal as a nonparty appellant since it was, in fact, aggrieved by the judgment of the Supreme Court (see CPLR 5511; *Sanango v New York City Health & Hosps. Corp.*, 6 AD3d 519 [2004] [nonparty NYS DSS permitted to appeal determination of NYC DSS]; *Matter of Tormos v Hammons*, 259 AD2d 434, 435-436 [1999] [County DSS acts under State DSS]; see generally *Matter of Richmond County Socy. for Prevention of Cruelty to Children*, 11 AD2d 236, 239, affd 9 NY2d 913 [1961], cert denied 368 US 290 [1961] [the critical inquiry is "whether the person seeking to appeal has a direct interest in the controversy which is affected by the result and whether the adjudication has a binding force against the rights, person or property of the party or person seeking to appeal"]). Indeed, none of the parties has challenged the capacity of DOH to defend this matter, or to pursue this appeal.

nulled the DOH's determination on the ground that it was arbitrary and capricious and contrary to the federal and state laws that govern Medicaid eligibility, citing with approval *Matter of Kaiser v Commissioner of N.Y.S. Dept. of Health* (13 Misc 3d 1211[A], 2006 NY Slip Op 51786[U] [2006]). The DOH appeals.

Hammond died in January 2009 approximately two months after the appeal was argued before this Court. Jennings was subsequently issued limited letters of administration on June 24, 2009, appointing him as administrator of Hammond's estate. Jennings thereafter was substituted for Hammond as the petitioner-respondent on this appeal. We now reverse the judgment of the Supreme Court.

## II

The primary purpose of the Medicaid program is to enable each state, jointly with the federal government, to furnish "medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services" (42 USC § 1396-1; *see Cricchio v Pennisi*, 90 NY2d 296, 304-305 [1997]). For purposes of eligibility for Medicaid, the government considers the amount of an individual's "assets," defined as "all income and resources of the individual and of the individual's spouse, including any income or resources which the individual or such individual's spouse is entitled to but does not receive because of action . . . by the individual or such individual's spouse (42 USC § 1396p [h] [1]; *see* Social Services Law § 366 [5] [d] [1]). If the individual's financial assets fall below a certain income level, he or she becomes eligible for Medicaid benefits.

Throughout the years, nonqualifying individuals have attempted to shelter their assets and income to establish their eligibility for Medicaid benefits (*see Matter of Abraham XX.*, 11 NY3d at 434; Rosenberg, *Supplemental Needs Trusts for People with Disabilities: The Development of a Private Trust in the Public Interest*, 10 BU Pub Int LJ 91, 127 [2000]), prompting Congress to enact the Omnibus Budget Reconciliation Act of 1993 (hereinafter OBRA), restricting individuals' manipulation of their assets to obtain Medicaid benefits (*see* 42 USC § 1396p [d] [4]). Consonant with OBRA, the New York State Legislature enacted, among other provisions, Social Services Law § 366 (5) (d) (3), which, echoing the federal statute, provides that "[i]n

determining the medical assistance eligibility of an institutionalized individual, any transfer of an asset by the individual or the individual's spouse for less than fair market value," made within the three years immediately preceding the date on which the individual was both institutionalized and applied for medical assistance, would render the individual ineligible for Medicaid benefits and nursing-facility services (*see* 42 USC § 1396p [c] [1] [A], [B]; 18 NYCRR 360-4.4 [c] [2] [ii]).

The Medicaid statutes, however, provide an exemption to this rule, whereby an individual may transfer his or her own income and assets to fund an SNT without having the funds counted as available resources for Medicaid eligibility purposes (*see* 42 USC § 1396p [c]). Congress permitted these SNTs to be created with the individual's income and/or assets, either as a first-party SNT to benefit the individual himself or herself, or as a third-party SNT benefitting a disabled child or some other third party (*see* 42 USC § 1396p [c] [2] [B] [iii], [iv]; *see also* Social Services Law § 366 [5] [d] [3] [ii] [C], [D]; 18 NYCRR 360-4.4 [c] [2] [iii] [c] [1] [iii], [iv]). In general terms, the structure of each Medicaid-eligible SNT is essentially the same, involving a transfer of assets or income into a trust managed by a trustee for the benefit of a disabled person, with the caveat that the beneficiary must have no control over any disbursements made from the trust and no ability to revoke the trust (*see* 42 USC § 1382b [e] [3] [A]; 20 CFR 416.1201 [a] [1]).

More specifically, and consistent with the federal regulations, the Legislature codified the definition of an SNT in 1993, pursuant to EPTL 7-1.12, defining it as a "discretionary trust established for the benefit of a person with a severe and chronic or persistent disability" by his or her parent, grandparent, legal guardian, or a court (EPTL 7-1.12 [a] [5]; *see* 42 USC § 1396p [d] [4][A];[4] *Sullivan v County of Suffolk*, 174 F3d 282, 284 [1999], *cert denied* 528 US 950 [1999]; SMM § 3259.7 [A]). The SNT "shelter[s] a . . . disabled person's assets for the dual purpose of securing and maintaining eligibility for state-funded

---

4. 42 USC § 1396p (d) (4) (A) refers to a special needs trust as, in relevant part: "A trust containing the assets of an individual under the age 65 who is disabled . . . and which is established for the sole benefit of the individual by a parent, grandparent, legal guardian of the individual, or a court." To qualify for an exception to the rules in this section, the trust must contain a provision stating that, upon the death of the individual, the State receives all amounts remaining in the trust, up to an amount equal to the total amount of medical assistance paid on behalf of the individual (*see Matter of Abraham XX.*, 11 NY3d at 435).

services, and enhancing the disabled person's quality of life with supplemental care paid by his or her trust assets" (*Matter of Abraham XX.*, 11 NY3d at 434; *see* Turano, Practice Commentaries, McKinney's Cons Laws of NY, Book 17B, EPTL 7-1.12, at 319). Such an SNT is frequently funded with substantial monetary resources emanating from an inheritance, bequest, gift, real estate property, lawsuit settlement proceeds, or "assets [the settlor] had prior to setting up the trust" (*Reames v Oklahoma ex rel. Oklahoma Health Care Auth.*, 411 F3d 1164, 1173 [2005], *cert denied* 546 US 1225 [2006]; *see Cricchio v Pennisi*, 90 NY2d at 303; EPTL 7-1.12 [a] [5] [v]; Grassi, *Estate Planning for a Family with a Special Needs Child*, 23 Prob & Prop [No. 4] 14, 16 [Jul/Aug 2009]), and its funds are used "to provide additional health care services and equipment, specialized or unique therapy, private health insurance, educational and vocational training, computers and software, case management services, and recreational activities" for the disabled child or recipient herself (Rosenberg, 10 BU Pub Int LJ, at 95-96 [2000]).

Once Medicaid eligibility is established after disregarding the recipient's funds earmarked for deposit in the SNT, Medicaid requires the computation of the recipient's NAMI available for his or her expected contribution towards his or her own monthly post-eligibility costs of care (*see Sai Kwan Wong v Doar*, 571 F3d 247, 258 [2009]; 42 CFR 435.832). The post-eligibility treatment of the corpus of a trust established by the Medicaid recipient is governed by 42 USC § 1396p (d) (1), which provides, in relevant part, that such income "shall be considered resources available to the individual . . . [f]or purposes of determining an individual's eligibility for, *or amount of,* benefits under a State [Medicaid] plan" (42 USC § 1396p [d] [1], [3] [B] [emphasis added]). The federal regulation implementing that statute provides that, for post-eligibility purposes, the general rule is to broadly count all "[i]ncome that was disregarded in determining eligibility," subject to certain "required deductions" not relevant herein (42 CFR 435.832 [c]).

Since "[a]s a condition of the receipt of Federal program funding, State Medicaid plans must conform with the statutory standards established by Federal law and the regulations promulgated by the Secretary of Health and Human Services (42 USC § 1396a; Social Services Law § 363-a [1])" (*Cricchio v Pennisi*, 90 NY2d at 305), the corresponding New York regulation, 18 NYCRR 360-4.9, entitled "Post-eligibility utilization of income,"

mirrors the federal regulation, and consequently provides as follows:

> "For a person in permanent absence status in a medical facility, after [medical assistance or Medicaid] eligibility is established the person is subject to chronic care budgeting. Under chronic care budgeting, *all income must be applied toward the cost of care in the facility, including income disregarded or considered unavailable for the purpose of determining [medical assistance] eligibility.* However, before any income is required to be applied to the person's cost of care, [certain] deductions will be made" (emphasis supplied).

The SMM, at section 3259.7 (B) (1) and (C) (5) (b), expressly confirms that all income received by an applicant and "placed in a trust is . . . subject to the post-eligibility rules" of inclusion in the recipient's NAMI.

In recently reviewing these provisions with respect to a first-party SNT, the United States Court of Appeals for the Second Circuit (hereinafter the Second Circuit) granted great deference to the DOH's interpretation of Medicaid regulations requiring SSDI benefits deposited into an SNT to be part of the settlor's NAMI for the purpose of calculating his or her own post-eligibility Medicaid benefits, explaining that

> "we discern no inconsistency in a statute that provides that an individual *may* create a Special Needs Trust with SSDI income, but leaves it to the agency to determine how to treat the income contained in such a trust—whether from SSDI or any other source—for purposes of Medicaid eligibility and post-eligibility determinations" (*Sai Kwan Wong v Doar*, 571 F3d at 258; *see Reames v Oklahoma ex rel. Oklahoma Health Care Auth.*, 411 F3d at 1173).

### III

On the instant appeal, Jennings contends that the transfer of Hammond's recurring Social Security retirement and pension income into the third-party SNT created for Frediland's benefit must be excluded from her NAMI for the purpose of calculating her own contribution towards her Medicaid post-eligibility benefits. Jennings argues this despite the fact that Hammond did not create her own first-party SNT to potentially shield her

income from such a benefit determination. According to Jennings, the DOH acted arbitrarily and capriciously in determining that Hammond's income must be counted in connection with her own post-eligibility contributions for the cost of her care, albeit not her Medicaid eligibility. The DOH argues, to the contrary, that the federal and state statutory framework expressly requires the inclusion of this income for post-eligibility purposes. We agree with the DOH.

Preliminarily, it should be noted that the primary issue presented on this appeal is not whether Hammond could create the SNT for Frediland's benefit, or whether her income, when deposited in his SNT, affected Frediland's own eligibility or post-eligibility status should he apply for Medicaid in the future. Neither party to this appeal has challenged the appropriateness of the SNT as it concerns Frediland, and we express no opinion regarding this issue. Nor are we faced with the task of examining a first-party SNT funded by Hammond for herself. Rather, the primary issue presented is whether the DOH, in applying the Medicaid regulations, properly interpreted them and had a rational basis to conclude that the recurring income Hammond deposited into Frediland's SNT was a resource countable towards her own post-eligibility benefits.

In interpreting the Medicaid statutory framework with respect to this issue, we must be cognizant of the appropriate standard of review in light of the procedural posture of this matter as a CPLR article 78 proceeding (*see* CPLR 7803 [3]).

> "Under most circumstances, judicial review of an administrative determination made after a hearing required by law, and at which evidence was taken, is limited to whether that determination is supported by substantial evidence (*see* CPLR 7803 [4]; *300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 179 [1978]; *Matter of 105 Northgate Coop. v Donaldson*, 54 AD3d 414, 416 [2008]; *Matter of New Venture Gear Inc. v New York State Div. of Human Rights*, 41 AD3d 1265, 1266 [2007]). However, such an administrative determination is arbitrary and capricious when it exceeds the agency's statutory 'authority or [is made] in violation of the Constitution or laws of this State' (*Matter of Pasieka v New York City Tr. Auth.*, 31 AD3d 769, 770 [2006]; *see Matter of New York City Dept. of Envtl. Protection v New York City Civ. Serv. Commn.*,

78 NY2d 318, 324 [1991]; *Matter of New York State Tenants & Neighbors Coalition, Inc. v Nassau County Rent Guidelines Bd.*, 53 AD3d 550, 552 [2008])" (*Matter of Lipani v New York State Div. of Human Rights*, 56 AD3d 560, 560-561 [2008]).

In a proceeding such as this, which challenges a determination made by an administrative agency as to the proper interpretation of statutes and regulations, the court's function is to ascertain, upon the proof before the agency, whether its determination had a rational basis in the record or, conversely, was arbitrary and capricious or affected by an error of law (*see Matter of County of Monroe v Kaladjian*, 83 NY2d 185, 189 [1994]; *Matter of Heintz v Brown*, 80 NY2d 998, 1001 [1992]; *Matter of Sunrise Manor Ctr. for Nursing & Rehabilitation v Novello*, 19 AD3d 426, 427 [2005]; *Matter of University Hgts. Nursing Home v Chassin*, 245 AD2d 776, 777 [1997]; *Matter of Boyland v Perales*, 205 AD2d 759, 763 [1994]). An agency action is deemed to be arbitrary if it is taken "without [a] sound basis in reason and . . . without regard to the facts" (*Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 231 [1974]; *see Matter of Senior Care Servs., Inc. v New York State Dept. of Health,* 46 AD3d 962, 965 [2007]). The "DOH's determination need only be supported by a 'rational basis' " if it is to be upheld (*Matter of County of Monroe v Kaladjian*, 83 NY2d at 189, quoting *Matter of Heintz v Brown*, 80 NY2d at 1001; *see Matter of Monroe Community Hosp. v Commissioner of Health of State of N.Y.*, 289 AD2d 951, 952-953 [2001]).

An administrative agency's "rulings, interpretations and opinions" of the statute it is charged with enforcing or implementing are entitled to great weight, to the extent that the interpretation relies on the special competence which the agency is presumed to have developed in its statutory administration (*Skidmore v Swift & Co.*, 323 US 134, 140 [1944]; *see Matter of Rosen v Public Empl. Relations Bd.*, 72 NY2d 42, 47 [1988]; *Matter of Bates v Toia*, 45 NY2d 460, 464 [1978]; *Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459 [1980]). Of special relevance here, " 'even relatively informal' CMS [State Medicaid Manual] interpretations warrant 'respectful consideration due to the complexity of the (Medicaid) statute and the considerable expertise of the administering agency' " (*Morenz v Wilson-Coker*, 415 F3d 230, 235 [2005], quoting *Community Health Ctr. v Wilson-Coker*, 311 F3d 132, 138 [2002]).

Applying these principles to the matter at bar, we find that the Supreme Court erred in concluding that the DOH's inter-

pretation of the Medicaid provisions governing the calculation of post-eligibility benefits for an applicant who deposits income into a third-party SNT was irrational, arbitrary and capricious, or affected by an error of law. As previously noted, an applicant for Medicaid, such as Hammond, may not herself be deemed ineligible by reason of assets or income transferred to her "child who is blind or disabled, or to a trust established solely for the benefit of such child" or "for the benefit of an individual under [65] years of age who is disabled" (Social Services Law § 366 [5] [d] [3] [ii] [C], [D]; see 18 NYCRR 360-4.4 [c] [2] [iii] [c] [1] [iii], [iv]; 42 USC § 1396p [c] [2] [B] [iii], [iv]). In light of the foregoing federal and state statutes and regulations, it is clear that Hammond did not jeopardize her own eligibility for Medicaid by transferring her monthly income into the SNT for the benefit of her son, who was both disabled and under 65 years of age (see *Reames v Oklahoma ex rel. Oklahoma Health Care Auth.*, 411 F3d at 1164; *Estate Planning for a Family with a Special Needs Child*, 23 Prob & Prop [No. 4], at 16).

Aside from the question of her eligibility, however, the Medicaid statutes required Hammond to contribute a portion of her NAMI towards her own post-eligibility nursing home and medical care expenses. In that regard, the statute provides that income placed in a trust, and disregarded for eligibility purposes, shall be counted "[f]or purposes of determining an individual's . . . amount of . . . benefits" (42 USC § 1396p [d] [1]; see 18 NYCRR 360-4.9). Once Hammond entered the nursing home and applied for her own Medicaid benefits, these post-eligibility regulations were triggered, and the DOH was, pursuant to its rules, required to count the income Hammond placed in Frediland's SNT for purposes of determining her own contribution towards her post-eligibility benefits (see 42 CFR 435.832; 18 NYCRR 360-4.9; *Reames v Oklahoma ex rel. Oklahoma Health Care Auth.*, 411 F3d at 1164). This conclusion is based on 42 CFR 435.832 (c) and the SMM, which provide that only specifically enumerated deductions apply to post-eligibility chronic care budgeting, and that "[i]ncome that was disregarded in determining eligibility must be considered in this process" (see 42 USC § 1396p [d] [1]; 18 NYCRR 360-4.9).

Such a conclusion is further supported by the Second Circuit's recent decision in *Sai Kwan Wong v Doar* (571 F3d at 258), in which a permanently disabled Medicaid recipient, Wong, residing in a nursing home, was the beneficiary of an SNT funded with his own SSDI income. In ruling in favor of the DOH, the

Second Circuit afforded great deference to the enforcing agency's regulations so as to include Wong's SSDI income in his NAMI for the purpose of calculating his post-eligibility benefits (*id.* at 258). Here, Hammond transferred all of her monthly income into a third-party SNT for Frediland's benefit, thus allowing him the opportunity to access or purchase additional services. In *Sai Kwan Wong v Doar*, where the SNT benefitted Wong himself by providing funds to cover the cost of a special aide, Wong was nonetheless disallowed from sheltering his SSDI income from a post-eligibility benefit determination (*id.* at 258). It thus follows that Hammond, who is not even the beneficiary of her own SNT, should not be allowed to shelter her Social Security retirement and pension income from the same requirements.

Clearly, given the statutory framework and the enforcing agency's regulations, Hammond's Social Security and pension income, which funded Frediland's SNT, could not be excluded from her NAMI. The exemption created by 42 USC § 1396p (d) (4) was not designed to apply in favor of Hammond, the settlor of the third-party SNT. Rather, the exemption is for the benefit of Frediland, the disabled beneficiary of the SNT, so as to not jeopardize *his* eligibility for government benefits (*see* EPTL 7-1.12 [b] [3] ["Neither principal nor income held in trust shall be deemed an available resource to the *beneficiary* under any program of government benefits or assistance" (emphasis supplied)]). Thus, the general statutory rule that assets transferred by Hammond to the SNT are counted for purposes of determining the amount of *her* benefits would apply (42 CFR 435.832 [c]), and the DOH's determination had a "rational basis" (*Matter of County of Monroe v Kaladjian*, 83 NY2d at 189; *see Matter of Heintz v Brown*, 80 NY2d at 1001; *Matter of Monroe Community Hosp. v Commissioner of Health of State of N.Y.*, 289 AD2d at 952-953).

In addition, the exemption created by 42 USC § 1396p (d) expressly states that it applies to income and assets "used to form all or part of the corpus of the trust" and "contain[ed]" in the SNT (42 USC § 1396p [d] [2] [A]; [4] [A]). However, Hammond's recurring monthly income was not already "contain[ed]" in the trust but, prior to being placed in the trust, was income available to her, which was only thereafter transferred by the trustee to the SNT. As her income was not already "contain[ed]" in the SNT, it could not have been exempted from the post-eligibility determinations (*see Reames v Oklahoma ex rel. Oklahoma Health Care Auth.*, 411 F3d at 1168-1171).

Contrary to the conclusion of our dissenting colleague, our determination today does not frustrate a "parental right" to establish an SNT for a disabled child, but merely disallows a parent or guardian in a similar situation as Hammond from utilizing this statutory exemption for her own benefit. It would be counter to public policy to permit Hammond to attempt to take a first-party benefit from a third-party SNT, given that the available income or resources placed in the SNT are for the sole benefit of Frediland. Moreover, while Hammond was additionally using her pension money to fund Frediland's SNT, the majority of the income funding the SNT came from her own Social Security retirement benefits. By definition, Social Security retirement benefits "provide a continuous source of benefits to meet the presumed need a wage earner and his or her dependents face" after his or her retirement as a result of advanced age (*Casalvera v Commissioner of Social Sec.*, 998 F Supp 411, 415 [1998], *affd without op* 176 F3d 471 [1999]; *see Califano v Goldfarb*, 430 US 199, 213 [1977]), and are unassignable (*see Reames v Oklahoma ex rel. Oklahoma Health Care Auth.*, 411 F3d at 1164). These government benefits are not generally designed "to provide a means of assuring future financial security [for the recipient,] but only to provide income when it is actually needed" (*Singer v Secretary of Health & Human Servs.*, 566 F Supp 204, 208 [1983] [applying this rule to SSI benefits]). Thus, these Social Security benefits were meant to help Hammond with her immediate needs during her lifetime, and were not to be assigned or preserved as future financial security for a third party such as Frediland (*see Matter of Ullman*, 184 Misc 2d 7, 9 [2000]). This conclusion is especially apt given the fact that Frediland is already receiving SSDI and Medicare benefits.

An additional basis for upholding the DOH's determination, contrary to the conclusion of the trial court and that of our dissenting colleague, lies in the deference accorded to the DOH and its interpretation of the Medicaid statutes, as set forth in the SMM (*see Sai Kwan Wong v Doar*, 571 F3d at 260; *Morenz v Wilson-Coker*, 415 F3d at 235; *Reames v Oklahoma ex rel. Oklahoma Health Care Auth.*, 411 F3d at 1164; *Matter of Senior Care Servs., Inc. v New York State Dept. of Health*, 46 AD3d at 965). Specifically, "the [DOH] commissioner's interpretation of a regulation is 'controlling and will not be disturbed in the absence of weighty reasons' " (*Matter of Elcor Health Servs. v Novello*, 100 NY2d 273, 280 [2003], quoting *Matter of Cortlandt Nursing Care Ctr. v Whalen*, 46 NY2d 979, 980 [1979]; *see Mat-*

*ter of Sigety v Ingraham*, 29 NY2d 110, 114 [1971]), given the "large complex regulatory scheme" of the Medicaid statutes and the considerable expertise of the administering agency (*Sai Kwan Wong v Doar*, 571 F3d at 260; *see Morenz v Wilson-Coker*, 415 F3d at 235). Here, Jennings has failed to set forth any "weighty reason" to disregard the DOH's statutory interpretation of the Medicaid statutes, which the DOH is specifically charged with enforcing and administering.

Finally, although the dissent's analysis leads it to conclude that the DOH's interpretation was irrational, the Court of Appeals has previously held that the fact "that the [DOH]'s interpretation might not be the most natural reading of the regulation, or that the regulation could be interpreted in another way, does not make the interpretation irrational" (*Matter of Elcor Health Servs. v Novello*, 100 NY2d at 280).

For all of the foregoing reasons, we find nothing irrational, arbitrary and capricious, or legally erroneous with respect to the DOH's interpretation and treatment of income for post-eligibility purposes and, as a result, the determination of the DOH should not have been annulled.

## IV

In accordance with the foregoing, the Supreme Court should have confirmed the determination, denied the petition and dismissed the proceeding in its entirety. Consequently, the judgment is reversed, on the law, the determination is confirmed, the petition is denied, and the proceeding is dismissed on the merits.

LEVENTHAL, J. (dissenting). I respectfully dissent. I do not concur with the majority's conclusion that there was a rational basis for the determination of the New York State Department of Health (hereinafter the DOH) that the transfer of the settlor/parent's recurring income into a supplemental needs trust (hereinafter SNT), created for his or her disabled adult child, must be counted toward his or her net available monthly income (hereinafter NAMI) for calculation of his or her own Medicaid post-eligibility benefits. For the reasons stated below, I believe that 42 USC § 1396p (d) does not mandate that result, and that the DOH's determination that the settlor/parent here was required to contribute virtually her entire NAMI toward the cost of her post-eligibility Medicaid services during her lifetime, thereby effectively cutting off funding to the valid SNT created for her disabled son, was arbitrary and capricious and contrary

to the federal and state laws that govern Medicaid post-eligibility benefit contributions.

This Court should affirm the judgment entered January 12, 2007 for several reasons. First, this Court is not bound by the federal statutory and regulatory authorities that address this issue since federal law does not preempt New York law in this area. Second, in deciding this case on state statutory and regulatory grounds, both the Social Services Law and the DOH regulations provide no guidance on the issue of whether corpus and income deposited by a settlor into a third-party SNT must be included in the Medicaid benefit contribution of the settlor of the SNT. Therefore, this Court should look to EPTL 7-1.12 as an interpretational gap-filler. Third, New York law favors the policy underlying EPTL 7-1.12 since it preserves the viability of a third-party SNT as a mechanism for planning for the future care of disabled relatives. Finally, contrary to the DOH's assertion, exempting the corpus and income deposited into third-party SNTs from Medicaid post-eligibility benefit contributions will not create an opportunity for widespread abuse.

It is undisputed that, on September 15, 2004, the petitioner's decedent, Mattie Lou Hammond, established a third-party, irrevocable SNT for the benefit of her then 52-year-old son, Frediland Hammond. The trust agreement creating the SNT (hereinafter the SNT agreement) included the required "payback" provision, which provided that the trust would terminate upon Frediland's death, with any remaining principal and accumulated interest to be used to reimburse the appropriate Medicaid entity in New York for the medical assistance provided to Frediland during his lifetime, prior to distributing any remaining trust assets to his estate. I agree with the majority that Hammond created a valid SNT for her disabled son, but disagree with their determination that, under the circumstances of this case, she could no longer fund that trust during her lifetime without severely reducing the amount of her Medicaid benefits.

Background

Medicaid is a jointly funded federal and state medical assistance program that was established by title XIX of the Social Security Act (42 USC § 1396 *et seq*.) and is implemented in New York State by article 5, title 11, of the Social Services Law (hereinafter together the Medicaid statutes). The purpose of the program is to pay for necessary medical care for eligible individuals whose income and resources are insufficient to meet

the costs of their medical care (42 USC § 1396; Social Services Law § 363; *Arkansas Dept. of Health & Human Servs. v Ahlborn*, 547 US 268, 275 [2006]). As a condition to the receipt of federal program funding, state Medicaid plans must conform with the statutory standards established by federal law and the regulations promulgated by the Secretary of the United States Department of Health and Human Services (42 USC § 1396a; Social Services Law § 363-a [1]). To comply with the Medicaid statutes, a state's plan must include, inter alia, "reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan" (42 USC § 1396a [a] [17]). 42 USC § 1396a (a) (17) requires states to consider available "income" and "resources" when making two separate determinations as to whether an individual is eligible for Medicaid, and the amount of benefits to which he or she is entitled (*see* 42 USC § 1382a [defining income]; 42 USC § 1382b [defining resources]).

In 1993 Congress amended the federal component of the Medicaid statutes when it passed the Omnibus Budget Reconciliation Act of 1993 (hereinafter OBRA) (Pub L 103-66, 107 US Stat 312 [103d Cong, 1st Sess, Aug. 10, 1993]). The amendments inserted 42 USC § 1396p (d)[1] into the Medicaid statutes. That section addresses the treatment of trust amounts for eligibility and benefit contribution purposes. Paragraph (1) of subsection (d) provides that, subject to paragraph (4), the rules specified in paragraph (3) shall apply to a trust established by an individual and shall be considered in determining *both* that individual's Medicaid eligibility and benefits. Regarding the treatment of an irrevocable trust, 42 USC § 1396p (d) (3) (B) provides that the corpus of such a trust "shall be considered resources available to the individual," and that payments from the trust "shall be considered income of the individual." Paragraph (4) includes an exemption, which provides that *all* of subsection (d) does *not apply* to, among other things, an SNT trust

> "containing the assets of an individual under the age of 65 who is disabled . . . and which is established for the benefit of such individual by a parent, grandparent . . . if the State will receive all amounts remaining in the trust upon the death of such indi-

---

1. 42 USC § 1396a (a) (18) requires that state Medicaid plans comply with 42 USC § 1396p (d).

vidual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this title" (42 USC § 1396p [d] [4] [A]; *see Keith v Rizzuto*, 212 F3d 1190, 1193 [2000], *cert denied* 531 US 960 [2000]).

42 USC § 1396p does provide guidance, insofar as to Medicaid eligibility, to a situation where, as here, a settlor transfers assets to an SNT. Specifically, 42 USC § 1396p (c) (2) (B) (iii) and (iv) provide that a person will not be ineligible for Medicaid benefits when that person transfers assets to an SNT for the benefit of a disabled child or spouse under the age of 65 (*see* Social Services Law § 366 [5] [d] [3] [ii] [C], [D]). However, 42 USC § 1396p (d) (4) does not address how, if at all, a parent/settlor's transfer of assets to an SNT would affect that parent's Medicaid *benefits* determination.

The Medicaid statutes generally require Medicaid recipients who receive nursing home care to significantly defray the costs of such care (*see* 42 USC § 1396a [q] [1] [A]). In November 1994 the Centers for Medicare and Medicaid Services (hereinafter the CMS) added section 3259.7 to the State Medicaid Manual (hereinafter SMM)[2] to fill a "perceived statutory gap" in the exemption created by 42 USC § 1396 (d) (4) (*Sai Kwan Wong v Doar*, 571 F3d 247, 253 [2009]). SMM § 3259.7 provides that income placed in an SNT is subject to the post-eligibility rules in the Code of Federal Regulations (SMM § 3259.7 [C] [5] [b]). The CMS, under the aegis of the Department of Health and Human Services (hereinafter HHS), promulgated 42 CFR 435.832 "[t]o implement this requirement" (*Sai Kwan Wong v Doar*, 571 F3d at 251). Under 42 CFR 435.832, the CMS subtracts "required deductions" from a Medicaid applicant's monthly income, with the difference between those two figures constituting the applicant's expected contribution to his or her own cost of care.

Thus, although Congress expressly stated that the trust corpus and income inclusion rule did *"not* apply" to SNTs established for the sole benefit of disabled children and grandchildren, the CMS apparently interpreted this language "as a delegation of authority . . . to determine what eligibility and post-eligibility rules shall apply to those trusts" (*Sai Kwan Wong v Doar*, 571 F3d at 252). The CMS inferred from the pro-

---

**2.** The SMM " 'makes available to all State Medicaid agencies, in a form suitable for ready reference, informational and procedural material needed by the States to administer the Medicaid program' " (*Sai Kwan Wong v Doar*, 571 F3d at 253 n 6, quoting SMM Foreword).

hibitive language that Congress inserted into 42 USC § 1396p (d) (4) a directive to affirmatively regulate the role of SNT corpus and income for the purposes of post-eligibility benefit contributions. The CMS then used this inferred authority to require Medicaid applicants to apply the corpus and income that they deposited into a third-party SNT to their post-eligibility benefit contributions, effectively overturning Congress's explicit 42 USC § 1396p (d) (4) exemption. The SMM does not provide any rationale for the CMS's interpretation of 42 USC § 1396p (d) (4). By electing to treat the SNT corpus and income as available resources or income to the SNT settlor for the purpose of calculating the settlor's required benefit contributions, the CMS performed an end run around 42 USC § 1396p (d) (4) (A) and eliminated that statute's exemption.

The majority concludes that both the federal and state statutory frameworks expressly require that Hammond's transfer of income into the third-party SNT, created for the benefit of her adult disabled son, was required to be included in the calculation of her own Medicaid post-eligibility benefits during her lifetime. However, the record before this Court demonstrates that SMM § 3259.7 is the only Medicaid regulation or guideline that requires income placed in a third-party SNT to be included in an applicant's post-eligibility benefit contribution. Moreover, contrary to the majority's assertion, 42 USC § 1396p (d) (1) does not state that income placed in a trust, and disregarded for eligibility purposes, shall be counted "for purposes of determining an individual's . . . amount of . . . benefits." While the Medicaid statutes are "statute[s] of unparalleled complexity" (*DeJesus v Perales*, 770 F2d 316, 321 [1985], *cert denied* 478 US 1007 [1986]), that complexity does not warrant a statutory interpretation that is erroneous. Furthermore, the SMM "is not promulgated under the notice and comment provisions of the [Federal] Administrative Procedure Act and thus does not 'have the force and effect of law' " (*Hobbs v Zenderman*, 579 F3d 1171, 1186 n 10 [2009], quoting *Ramey v Reinertson*, 268 F3d 955, 963 [2001]). The CMS asserts that SMM § 3259.7 is "binding on Medicaid state agencies" (SMM Foreword). However, SMM § 3259.7 contradicts New York legislative policy favoring the preservation of SNTs. Specifically, EPTL 7-1.12 embodies New York State policy, which favors SNTs as vehicles for families who wish to plan for the care of their surviving disabled children after nondisabled family members die. As discussed below, federal law does not preempt this state policy.

Federal Law Does Not Preempt New York Law

Congress may only preempt state law in two permissible ways. Congress may either expressly or impliedly preempt state regulations. 42 USC § 1396p (d) and SMM § 3259.7 do not preempt EPTL 7-1.12 and other provisions of New York law governing post-eligibility Medicaid benefit contributions. Consequently, this Court may render a decision in this case solely on state-law grounds.

A. Express Preemption

Where " 'Congress legislate[s] in a field which the States have traditionally occupied . . . [w]e start with the assumption that the historic police powers of the States were not to be superseded by the [federal legislation] unless that was the *clear and manifest purpose of Congress*' " (*Medical Socy. of State of N.Y. v Cuomo*, 976 F2d 812, 816 [1992], quoting *Rice v Santa Fe Elevator Corp.*, 331 US 218, 230 [1947] [holding that federal law did not preempt a provision of the Public Health Law, which limited the amount that physicians could charge their patients under the Medicare Act]). The United States Supreme Court requires " 'compelling evidence of an intention to preempt' in traditionally state-regulated fields" (*Medical Socy. of State of N.Y. v Cuomo*, 976 F2d at 816, quoting *General Motors Corp. v Abrams*, 897 F2d 34, 41-42 [1990]). It is well settled that the disposition of trusts and estates falls within such a field (*see* EPTL art 7). "Supplemental needs trusts are governed by state law" (*Wong v Daines*, 582 F Supp 2d 475, 479 [2008], *affd sub nom. Sai Kwan Wong v Doar*, 571 F3d 247 [2009]). Likewise, the means and methodology by which states choose to allocate the costs of medical care are components of a "traditionally state-regulated field." (*Medical Socy. of State of N.Y. v Cuomo*, 976 F2d at 816.) "The regulation of public health and the cost of medical care are virtual paradigms of matters traditionally within the police powers of the state" (*Medical Socy. of State of N.Y. v Cuomo*, 976 F2d at 816).

The language of 42 USC § 1396p (d) does not evince Congress's express intent to preempt state law with respect to the formation and sustainability of third-party SNTs. Nor did Congress expressly intend the Medicaid program to be solely administered by the federal government. The EPTL, the Social Services Law, and DOH regulations implementing the Medicaid statutes govern "traditionally state-regulated fields." Consequently, federal law does not supersede New York law, since Congress did not provide for express preemption in the text of 42 USC § 1396p (d).

## B. Implied Preemption

If Congress does not use explicit preemptive language in its statutory scheme, implied preemption may exist in the form of either field preemption or conflict preemption. Field preemption occurs when a federal regulatory regime is "so pervasive as to make reasonable the inference that Congress left no room for the states to supplement it" (*Gade v National Solid Wastes Management Assn.*, 505 US 88, 98 [1992]). Conflict preemption, on the other hand, renders "compliance with both Federal and state regulations . . . a physical impossibility," or exists where "state law 'stands as an obstacle to the accomplishment and execution of the *full purposes and objectives* of Congress' " (*id.*, quoting *Hines v Davidowitz*, 312 US 52, 67 [emphasis added]). As discussed below, 42 USC § 1396p (d) does not impliedly preempt New York law.

## 1. Field Preemption

In order for field preemption to exist, federal regulation must be "so pervasive" that Congress could not have intended for the states to "supplement it." The Medicaid program is a hallmark of " 'cooperative federalism' " and "administered jointly by state and federal governments" (*Rebaldo v Cuomo*, 749 F2d 133, 139 [1984], *cert denied* 472 US 1008 [1985], quoting *Massachusetts Gen. Hosp. v Sargent*, 397 F Supp 1056, 1061 [1975] [holding that ERISA did not preempt the Public Health Law, which limits the rates that hospitals may charge to employee benefit plans]). Paraphrasing the United States Supreme Court, the United States Court of Appeals for the Second Circuit accurately described Medicaid as a " 'cooperative endeavor,' a 'cooperative program of shared financial responsibility' between the states and the federal government" (*Rebaldo v Cuomo*, 749 F2d at 139, quoting *Harris v McRae*, 448 US 297, 308-309 [1980]). Hence, the very nature of the Medicaid program nullifies any claim that New York law is field preempted by 42 USC § 1396p (d). Regarding Medicaid, "the case of federal preemption becomes a less persuasive one,' " rendering field preemption analysis of no consequence (*G. ex rel. K. v Hawai'i, Dept. of Human Servs.*, 2009 WL 1322354, *20, 2009 US Dist LEXIS 120529, *60 [D Hawaii 2009], quoting *Guzman v Shewry*, 544 F3d 1073, 1080 [2008]; *see Pharmaceutical Research & Mfrs. of Am. v Concannon*, 249 F3d 66, 74 n 6 [2001], *affd sub nom. Pharmaceutical Research & Mfrs. of America v Walsh*, 538 US 644 [2003]).

## 2. Conflict Preemption

There is no conflict between 42 USC § 1396p (d) and New York law with respect to whether a Medicaid applicant's monthly income, deposited into an SNT for his or her disabled child, must cover the Medicaid applicant's own cost of care. Neither federal statute nor New York law fosters a scenario where Medicaid applicants will encounter a "physical impossibility" in order to comply with both regimes. 42 USC § 1396p (d) (4) (A) solely exempts third-party SNTs, created by a parent or grandparent for the Medicaid applicant, from benefit calculations. 42 USC § 1396p (d) (4) (A) contains no express language requiring the exempt SNT corpus or income to then be included in the SNT settlor's expected Medicaid contribution when he or she applies for Medicaid on his or her own behalf. Additionally, New York law is hardly "an obstacle to the accomplishment and execution of the full purposes and objectives of" (*Pharmaceutical Research & Mfrs. of Am. v Concannon*, 249 F3d at 75) the federal component of Medicaid statutes. In fact, EPTL 7-1.12 furthers the "full purposes and objectives" of Medicaid, which are to provide affordable medical care to "those whose 'income and resources are insufficient to meet the costs of necessary medical services' " (*Pharmaceutical Research & Mfrs. of Am. v Concannon*, 249 F3d at 75, quoting 42 USC § 1396, now § 1396-1). States must administer their own Medicaid programs " 'in a manner consistent with simplicity of administration and the best interests of the recipients' " (*id.* at 75, quoting 42 USC § 1396a [a] [19]).

Similarly, the Legislature designed EPTL 7-1.12 with the intent "to benefit individuals with a wide variety of disabilities" (L 1993, ch 433, § 1). Its purpose "is to *encourage future care planning* by *instilling greater confidence* in families and friends of persons with disabilities that the trusts they establish for recipients of government assistance will be used for the *purposes they intend*" (*id.* [emphasis added]). EPTL 7-1.12 furthers the "full purposes and objectives" of Medicaid because it allows families to plan for the needs of their disabled children beyond what Medicaid would otherwise cover.

Furthermore, SMM § 3259.7 cannot preempt New York law where 42 USC § 1396p (d) failed to do so. Federal guidance manuals cannot overstep the bounds of their enacting statutes. "[A]n agency has no more power to preempt state law than is delegated to it by Congress, and the 'clear and manifest purpose of Congress' is required to dispel the presumption against

Federal preemption of traditional state police powers" (*Garrelts v SmithKline Beecham Corp.*, 943 F Supp 1023, 1050 [1996], quoting *Rice v Santa Fe Elevator Corp.*, 331 US 218, 231 [1947]). A ruling to the contrary would "accord [such] deference to agency intent as [to make it] sufficient to overcome the presumption" and "permit an agency to expand its power beyond the limits Congress intended" (*Garrelts v SmithKline Beecham Corp.*, 943 F Supp at 1050). Courts "should be 'both unwilling and unable to' " confer such authority (*id.*, quoting *Louisiana Pub. Serv. Commn. v FCC,* 476 US 355, 374-375 [1986]). It appears that the CMS has attempted to legislate around Congress's intent, thus reaching beyond the scope of its enacting statute.

As the above discussion makes evident, 42 USC § 1396p (d) and SMM § 3259.7 do not preempt EPTL 7-1.12 and New York law governing post-eligibility Medicaid benefit contributions. Absent any such preemption, the DOH's determination that Hammond or her estate can no longer fund the SNT at issue without adverse consequences is irrational and illogical, and affected by an error of law.

The majority properly notes that the "construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld" (*Matter of Howard v Wyman*, 28 NY2d 434, 438 [1971]; *see Matter of Gaffney v Village of Mamaroneck*, 21 AD3d 1031 [2005]). "Where, however, the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency" (*Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459 [1980]; *see Matter of Gaffney v Village of Mamaroneck*, 21 AD3d 1031 [2005]). "In such a case, courts are 'free to ascertain the proper interpretation from the statutory language and legislative intent' " (*Seittelman v Sabol*, 91 NY2d 618, 625 [1998], quoting *Matter of Gruber [New York City Dept. of Personnel—Sweeney]*, 89 NY2d 225, 231-232 [1996]). The DOH construes the statute and regulations as permitting Hammond to create a valid SNT for Frediland, but then comes to the illogical and irrational conclusion that she should not have been able to fund that trust without severe adverse consequences to herself.

Here, it should be noted, there is "no significant legislative history regarding § 1396p (d) (4)" (*Wong v Daines*, 582 F Supp 2d at 481 n 3; *see Hobbs ex rel. Hobbs v Zenderman*, 542 F Supp

2d 1220, 1228 [2008], *affd* 579 F3d 1171 [2009] ["Court's own best efforts have uncovered no sign that Congress ever men- tioned this provision in any published report"]). Therefore, the issue of whether corpus and income deposited into a third-party SNT by a settlor must be included in the settlor's Medicaid ben- efit contribution should be decided on state law grounds.

The Social Services Law and DOH Regulations Provide No Guidance on Third-Party Special Needs Trust Exemptions

The Social Services Law and DOH regulations do not address whether the income and corpus deposited into a third-party SNT can be used to cover the settlor's "cost of care." Social Services Law § 366 (2) (b) (2) (iii), which parallels the language in 42 USC § 1396p (d) (4) (A), exempts from Medicaid benefit contributions the income and corpus deposited into SNTs that were created for the sole benefit of a disabled Medicaid ap- plicant. Social Services Law § 366 (2) (b) (2) (iii) contains no language requiring that income or corpus deposited into an SNT must then be included in the SNT settlor's expected Medicaid contribution when the settlor becomes Medicaid eligible. Quite simply, "[t]here is no statutory provision to which [the State] can point that requires this classic bureaucratic Catch-22, or even suggests it" (*Matter of Kaiser v Commissioner of N.Y.S. Dept. of Health*, 13 Misc 3d 1211[A], 2006 NY Slip Op 51786[U], *3 [2006]).

18 NYCRR 360-4.9, the DOH regulation governing Medicaid benefit contributions, is also silent on this issue. The regulation "simply does not address income flowing into [third-party SNTs]" (*Matter of Kaiser v Commissioner of N.Y.S. Dept. of Health*, 13 Misc 3d 1211[A], 2006 NY Slip Op 51786[U], *3 [2006]). In response to the petitioner's contention in this regard, the DOH contends that 18 NYCRR 360-4.9 sets forth a broad default rule, requiring that "all income must be applied toward the cost of care . . . including income disregarded or considered unavailable for determining MA [medical assistance] eligibility" (18 NYCRR 360-4.9). The DOH argues that the only permissible exemptions to this scheme would be those specifically exempted by the regulation. The DOH further asserts that these listed exemptions are exclusive, that 18 NYCRR 360-4.9 does not men- tion deposits into third-party SNTs, and that any other source of income not exempted must be applied to a Medicaid ap- plicant's "cost of care."

The DOH's construction is unpersuasive because the excep- tions listed in 18 NYCRR 360-4.9 are merely illustrative and not

exclusive. This is demonstrated by the fact that 18 NYCRR 360-4.9 does not exempt the corpus and the income deposited into a third-party SNT, which are funds expressly exempted by the very statute which the DOH is obligated to implement. This illogical result suggested by the DOH undercuts its contention that 18 NYCRR 360-4.9 provides an exclusive list of exemptions from the default income inclusion rule. Instead, the silence of this regulation on the treatment of corpus and income deposited into a third-party SNT creates a vacuum of authority on this point of law. EPTL 7-1.12 fills this void.

EPTL 7-1.12

The Legislature imbued EPTL 7-1.12 with a clear and unambiguous mandate to protect third-party SNTs. Indeed, as the majority concedes, *Matter of Escher* (94 Misc 2d 952 [1978], *affd* 75 AD2d 531 [1980], *affd* 52 NY2d 1006 [1981]) permitted a parent to create a trust for a disabled adult child, without jeopardizing the child's eligibility for government benefits. The DOH's determination at issue serves to frustrate that parental right.

SNTs serve a dual, but equally important purpose. First, SNTs cover the cost of quality-of-life expenses for disabled beneficiaries without diminishing the amount they receive in government assistance (*see* EPTL 7-1.12 [a] [5] [ii]).[3] Second, SNTs provide the families of disabled beneficiaries with the peace of mind that the beneficiaries' future care expenses are well funded. New York law promotes both of these goals. As indicated above, EPTL 7-1.12 strives "to encourage future care planning by instilling greater confidence in families and friends of persons with disabilities that the trusts they establish . . . will be used for the purposes they intend" (L 1993, ch 433, § 1). Established state policy "favors planning to permit disabled individuals to secure the financial benefits of Medicaid, while retaining supplemental income and assets" (*Matter of Kamp*, 7 Misc 3d 615, 621 [2005]). EPTL 7-1.12 effectuates these objectives by exempting corpus and income deposited into a third-party SNT from Medicaid benefit contributions.

EPTL 7-1.12 also specifically contemplates the third-party SNT that Hammond created. Hammond's creation of the trust

---

**3.** SNT funds are used "to provide additional health care services and equipment, specialized or unique therapy, private health insurance, educational and vocational training, computers and software, case management services, and recreational activities" for the disabled child or recipient herself (Rosenberg, *Supplemental Needs Trusts for People With Disabilities: The Development of a Private Trust in the Public Interest*, 10 BU Pub Int LJ 91, 95-96 [2000]).

comported with the purposes and requirements of EPTL 7-1.12. Hammond established a third-party SNT for her disabled son to plan for his care after her death, and preserve the maximum Medicaid benefit assistance to which he would be entitled. The SNT agreement also included a statutorily mandated "payback provision" (see Social Services Law § 366 [2] [b] [2] [iii]; EPTL 7-1.12 [a] [5] [v]). The "payback provision" provides that the SNT agreement would terminate upon Frediland's death. At that time, any remaining principal and interest would be paid to the New York State Department of Social Services, the DOH and "any other appropriate 'Medicaid entity.' "

In light of the subject SNT's compliance with EPTL 7-1.12 and Social Services Law § 366 (2) (b) (2) (iii), this Court does not have the authority to permit the DOH to divert Hammond's Social Security retirement income and widow's pension, or raid the SNT corpus, to pay for her own Medicaid benefit contributions. The Social Services Law requires the DOH to "make such regulations, not inconsistent with law" (Social Services Law § 363-a [2]). However, the DOH's interpretation of Social Services Law § 366 (2) (b) (2) (iii) and 18 NYCRR 360-4.9 is inconsistent with the federal and state statutory scheme.

The majority concludes that the manner in which Hammond funded Frediland's SNT provides two grounds for rejecting the contentions made by Jennings. It posits that: (1) Social Security retirement benefits are unassignable and, therefore, Hammond could not deposit them into Frediland's SNT; and (2) those benefits were "meant to help Hammond with her immediate needs [during her lifetime] and not to be preserved as future financial security for a third-party." On the contrary, Hammond did not assign her Social Security retirement income to Frediland's SNT. She merely received the income and placed it into the SNT. Further, the majority fails to distinguish between Social Security retirement benefits and Supplemental Security Income (hereinafter SSI). Hammond received Social Security retirement benefits, not SSI. The majority relies upon Singer v Secretary of Health & Human Servs. (566 F Supp 204, 208 [1983]) for the proposition that Hammond received Social Security retirement benefits "to provide a means of assuring future financial security [for herself,] but only to provide income when it is actually needed." However, Singer only pertains to SSI, a program whose participants must demonstrate actual need in order to receive benefits, while Hammond received Social Security retirement income, a program whose purpose is to "provide

a continuous source of benefits to meet the presumed need a wage earner and his or her dependents face when he or she leaves the workforce as a result of old age" (*Casalvera v Commissioner of Social Sec.*, 998 F Supp 411, 415 [1998], *affd* 176 F3d 471 [1999]). Therefore, Hammond was entitled to receive her Social Security retirement benefits independent of her "actual" needs, and she was free to dispose of them as she saw fit.

The DOH contends that exempting the subject third-party SNT would open the door to unintended consequences. It argues that such a result would "enhanc[e] the ability of Medicaid applicants to simultaneously shelter their wealth and receive government medical benefits." On the contrary, these exemptions would only apply in a narrow set of circumstances. First, both EPTL 7-1.12 and Social Services Law § 366 (2) (b) (2) (iii) set forth specific guidelines regarding who may create and benefit from third-party SNTs. For instance, only parents or grandparents would be permitted to set up such SNTs for their disabled children or grandchildren. Moreover, according to EPTL 7-1.12, a third-party SNT beneficiary must be a "[p]erson with a severe and chronic or persistent disability" (EPTL 7-1.12 [a] [4]). Similarly, Social Services Law § 366 (2) (b) (2) (iii) requires a "disabled" person to be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months" (42 USC § 1382c [a] [3] [A]). Second, any trust agreement creating a third-party SNT must itself follow a specific statutory blueprint. To qualify the relevant SNT for the statutory exemptions previously discussed, such an agreement must contain a "payback" provision where, upon the death of the beneficiary, the trust would reimburse the state "up to the total value of all medical assistance paid on [his or her] behalf" (42 USC § 1396p [d] [4] [A]; *see* EPTL 7-1.12 [a] [5] [v]). The exemption would not apply to any SNT that failed to include this language. Finally, third-party SNT settlors must themselves apply and be eligible for Medicaid prior to any consideration of an exemption.

In sum, the DOH's determination at issue is irrational, as it permits Hammond to create a valid SNT for her disabled son, but frustrates the funding of that trust, thus effectively rendering it a nullity. Accordingly, the judgment entered January 12, 2007 should be affirmed, since the DOH's determination did not

have a rational basis in the record, was arbitrary and capricious, and was affected by an error of law (*see Matter of County of Monroe v Kaladjian*, 83 NY2d 185, 189 [1994]; *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 231 [1974]).

PRUDENTI, P.J., and FISHER, J., concur with BALKIN, J.; LEVENTHAL, J., dissents in a separate opinion.

Ordered that the judgment is reversed, on the law, without costs or disbursements, the determination is confirmed, the petition is denied, and the proceeding is dismissed on the merits.